### In re GRIBBON.

(Circuit Court, S. D. New York. April 20, 1892.)

CUSTOMS DUTIES — CLASSIFICATION—HEMSTITCHED HANDKERCHIEFS—EMBROIDERED HANDKERCHIEFS—HEMSTITCHED AND EMBROIDERED HANDKERCHIEFS.
  Certain handkerchiefs, composed of linen and cotton, imported under the tariff act of October 1, 1890, consisting—First, of handkerchiefs with a hemstitched border; second, of handkerchiefs embroidered or scolloped on the edge, and not hemstitched; and, third, of handkerchiefs with a hemstitched border, and embroidered either with initial letters or with figures worked by hand or machinery,—are dutiable, the hemstitched handkerchiefs, under paragraph 349 of said act, at 50 per centum ad valorem, as "handkerchiefs;" those with embroidered edge as textile fabrics embroidered by hand or machinery, under the proviso in paragraph 373, at 60 per centum ad valorem; and only those handkerchiefs which are embroidered and also hemstitched are dutiable as such under paragraph 373 of said act. The handkerchiefs which were hemstitched only, and those which were embroidered only, *held* not to be included in the provision for "embroidered and hemstitched hand-

kerchiefs," as contained in paragraph 373, under which provision such handkerchiefs were classified for duty by the collector of the port of New York.

## At Law.

Application by the importer under the provisions of section 15 of the so-called "Customs Administrative Act" of June 10, 1890, for a review by the circuit court of the decision of the board of United States general appraisers affirming the decision of the collector as to the merchandise which was imported into the port of New York October 10, 1890, consisting of certain linen and cotton handkerchiefs, part of which had a hemstitched border only; others were embroidered or scolloped on the edge, without hemstitch; and a third class had hemstitched borders, and were ornamented on the body with initial letters or figures embroidered by hand or machinery. All the handkerchiefs were classified for duty by the collector of the port at the rate of 60 per cent. ad valorem, under the provisions of paragraph 373 of Schedule J of the tariff act of October 1, 1890, which is as follows:

"(373) Laces, edgings, embroideries, insertings, neck rufflings, ruchings, trimmings, tuckings, lace window curtains, and other similar tamboured articles, and articles embroidered by hand or machinery, embroidered and hemstitched handkerchiefs, and articles made wholly or in part of lace, rufflings, tuckings, or ruchings, all of the above named articles composed of flax, jute, cotton, or other vegetable fiber, or of which these substances or either of them is the component material of chief value, not specially provided for in this act, sixty per centum ad valorem: provided, that articles of wearing apparel and textile fabrics, when embroidered by hand or machinery, and whether specially or otherwise provided for in this act, shall not pay a less rate of duty than that fixed by the respective paragraphs and schedules of this act upon embroideries of the materials of which they are respectively composed."

As to the handkerchiefs which were hemstitched and also embroidered or ornamented with initial letters, the importer filed no protest. As to the handkerchiefs which were embroidered only, and those which were hemstitched only, the importer protested against the classification by the collector, claiming that the hemstitched handkerchiefs and the embroidered handkerchiefs were dutiable only at the rate of 50 per cent. ad valorem under paragraph 349 of Schedule I of the tariff act of October 1, 1890, which provides, among other things, for "handkerchiefs," eo nomine.

The board of United States general appraisers sustained the decision of the collector, holding that the provision in paragraph 373 for "embroidered and hemstitched handkerchiefs" should be understood distributively, and that the copulative "and" should be read "or," so that the clause should apply to handkerchiefs which were hemstitched and those which were embroidered, as well as to handkerchiefs combining both characteristics of being hemstitched and also embroidered. The proceedings were appealed to the circuit court by the importer, and testimony was given in that court before one of the board of general appraisers, as an officer of the court, in behalf of the importer and the government. The importer offered the testimony of one witness to the effect that handkerchiefs which were embroidered and also hemstitched were known in trade and commerce at the time of the passage of the tariff act as "embroidered and hemstitched handkerchiefs." On the part of the government, testimony of several trade witnesses from leading commercial houses dealing in the goods in question was produced, from which it appeared that the usual name for handkerchiefs which were embroidered and also hemstitched was in trade, at the time of the passage of the tariff act, "Hemstitched Embroidered Handkerchiefs" or "Hemstitched and Embroidered Handkerchiefs," but that they were sometimes called for by the designation "Embroidered and Hemstitched Handkerchiefs." The proofs also showed that hemstitched handkerchiefs were a standard article in trade and commerce at the time of the passage of the tariff act, that handkerchiefs which were embroidered only were likewise a standard article in trade at that time, and that handkerchiefs which were both embroidered and also hemstitched were likewise a standard article. The trade testimony went to show that the handkerchiefs which were hemstitched and ornamented with an embroidered initial letter were known in trade as "Hemstitched Initialed Handkerchiefs." On the trial counsel for the importer argued that the provision of paragraph 373 should be read and understood literally according to the words of the act, and as referring only to handkerchiefs which were both embroidered and hemstitched.

On behalf of the government it was urged that the provision for hemstitched

handkerchiefs, being first found in the tariff act of October 1, 1890, and never having been used in any prior tariff, must be construed to apply to all handkerchiefs which were hemstitched; that since the decision of the supreme court of the United States in Robertson v. Glendenning, 132 U. S. 158, 10 Sup. Ct. Rep. 44, the term "embroideries" used in the earlier part of paragraph 373 would not cover embroidered handkerchiefs; and that consequently the provision for embroidered and hemstitched handkerchiefs must presumptively mean that embroidered handkerchiefs, which were a standard article of trade, were to be covered by the provision naming them in conjunction with hemstitched handkerchiefs. The United States attorney cited 19 Op. Attys. Gen. p. 157, where the attorney general of the United States held that the phrase "forgings of iron and steel," as used in clauses Nos. 163 and 167 (Tariff Ind. New) of the act of March 3, 1883, included forgings made of iron and forgings made of steel, and was not limited to articles composed of both iron and steel combined in the same forging; also the case of Marvel v. Merritt, 116 U. S. 11, 6 Sup. Ct. Rep. 207, where certain iron ore was held by the supreme court to be included within the provision of Schedule M, "Sundries," in title 33 of the Revised Statutes of 1874, for "mineral and bituminous substances in a crude state," and that the expression "mineral and bituminous substances" in that statute was to be taken distributively, so as to cover all substances within the description, whether mineral or bituminous or both. The United States attorney also cited senate report No. 2,130 of the fifty-first congress, second session, on the "Rates of Duty on Imports into the United States from 1789 to 1890, inclusive," etc., in which in the index to the tariff act of October 1, 1890, "handkerchiefs, hemstitched, cotton," and also "hemstitched handkerchiefs, cotton, flax, jute," were referred to as covered by paragraph 373; and also from the index to the tariff act of October 1, 1890, contained in a document entitled "Comparison of the Customs Law of 1883 with the New Law of 1890, with index, etc., Prepared under the Direction of the Committee on Finance, United States Senate, in Accordance with Senate Resolution of December 5, 1890," in which "handkerchiefs, hemstitched, cotton, flax, jute," and also "hemstitched handkerchiefs, cotton, flax, jute," are all referred to paragraph 373.

Curie, Smith & Mackie, (W. Wickham Smith, of counsel,) for the importer.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty.

LACOMBE, Circuit Judge. These articles which are in dispute are concededly handkerchiefs. As such they would be covered by the phraseology in paragraph 349 of the tariff act, if that were the only provision. It is claimed on behalf of the government, however, that they should pay the duty prescribed by paragraph 373 on laces, edgings, embroideries, and various other articles, including "embroidered and hemstitched handkerchiefs;" the contention of the government being that that phrase should be read as if it were written "embroidered handkerchiefs and hemstitched handkerchiefs," or "embroidered or hemstitched handkerchiefs." Of course, there is no difficulty, under the decisions, in construing such a clause so as to transform a conjunctive into a disjunctive word, provided there is anything in the act itself, or in such outside evidence as is proper to be considered, which would call for such a method of construction. The question, however, first raised is this: Whether there is any reason at all why the ordinary meaning of the words as they are written, which implies that the handkerchiefs referred to should be both embroidered and hemstitched, should be given any other construction. My attention is called to nothing in the act itself which requires such a construction. There is nothing shown in the debates of congress or the reports of its committee which indicates that it was the intent of con-

gress to provide in this paragraph a rate of duty for both varieties, or rather for all three varieties, of handkerchiefs,—the embroidered and hemstitched, the embroidered, and the hemstitched,—nor does there seem to be any illogical or absurd or peculiar result which would be reached by interpreting them as they are written.

The latter part of the paragraph, the proviso, may be fairly interpreted as laying upon embroidered handkerchiefs the same rate of duty which other embroideries of the same kind would pay. That being so, I see nothing to support the contention of the collector in any of the evidence which is presented here, or in any of the references to the proceedings of congress, except it be the mere casual circumstance that a clerk of the finance committee, in preparing a tabulation for the use of his superiors, has made an index which indicates that he understood that this phrase referred to two different varieties of handkerchiefs, rather than to a single kind. That being so, I do not feel warranted in so construing the act as to make it read otherwise than is expressed upon its face. The result is that the hemstitched handkerchiefs which have no embroidery upon them should be classified for duty under the provision of handkerchiefs in section 349; the embroidered handkerchiefs which are not hemstitched should be classified for duty as textile fabrics which have been embroidered by hand or machinery, and must therefore pay the same rate of duty that is paid by embroideries of the material of which they are composed, which, I understand, is cotton. Therefore, they should pay the same rate of duty as the other articles enumerated in paragraph 373. The decision of the board of appraisers is therefore reversed, and the collector directed to assess the duty in accordance with this opinion.