BAYERSDORFER & Co. v. UNITED STATES (No. 1136).[1]

ORNAMENTAL FLOWERS.
    Some effect must be given to the words " of whatever material composed " in paragraph 438, tariff act of 1909. The effect of that phrase modifying the phrase " ornamental * * * flowers not specially provided for," extends this to include articles composed in any part of a material not common to the natural or cut flower; and the dye or coloring matter here used is not common to cut flowers.—United States v. Bayersdorfer (175 Fed., 959).

United States Court of Customs Appeals, November 11, 1913.

APPEAL from Board of United States General Appraisers, Abstract 31381 (T. D. 33217).
    [Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins*, of counsel) for appellants.
*William L. Wemple*, Assistant Attorney General (*Samuel Isenschmid*, assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

H. Bayersdorfer & Co., of Philadelphia, Pa., dealers in and importers of florists' supplies, imported at that port a quantity of

---

[1] Reported in T. D. 33875 (25 Treas. Dec., 439).

immortelles, colored or dyed. They were classified by the collector of customs as ornamental flowers and rated for duty at 60 per cent ad valorem under paragraph 438 of the tariff act of 1909, reading as follows:

438. Feathers and downs of all kinds, including bird skins or parts thereof with the feathers on, crude or not dressed, colored, or otherwise advanced or manufactured in any manner, not specially provided for in this section, twenty per centum ad valorem; when dressed, colored, or otherwise advanced or manufactured in any manner, including quilts of down and other manufactures of down, and also dressed and finished birds suitable for millinery ornaments, and *artificial or ornamental* feathers, fruits, grains, leaves, *flowers,* and stems or parts thereof, of whatever material composed, not specially provided for in this section, sixty per centum ad valorem; boas, boutonnieres, wreaths, and all articles not specially provided for in this section, composed wholly or in chief value of any of the feathers, flowers, leaves, or other materials or articles herein mentioned, sixty per centum ad valorem.

The importers protested and, decision having been rendered against them by the Board of General Appraisers, appealed to this court. Their claim here urged is that the merchandise is properly dutiable at 25 per cent ad valorem as cut flowers, preserved, under paragraph 263 of said act, which may be quoted as follows:

263. Orchids, palms, azaleas, and all other decorative or greenhouse plants and *cut flowers, preserved or fresh,* twenty-five per centum ad valorem; lily of the valley pips, tulip, narcissus, begonia, and gloxinia bulbs, one dollar per thousand; hyacinth, astilbe, dielytra, and lily of the valley clumps, two dollars and fifty cents per thousand; lily bulbs and calla bulbs, five dollars per thousand; peony, Iris Kæmpferii or Germanica, canna, dahlia, and amaryllis bulbs, ten dollars per thousand; all other bulbs, bulbous roots or corms which are cultivated for their flowers or foliage, fifty cents per thousand.

Appellants have invoked the rule of long-continued customs practice supplemented by legislative approval. · The court is of the opinion, however, that there has not been here such long-continued or uniform practice as will sustain that contention, and that the variations in language between the tariff acts of 1897 and 1909 as to the particular subject matter preclude application of the rule of legislative interpretation or adoption. Rossman *v.* United States (1 Ct. Cust. Appls., 280, 283; T. D. 31321); Ahlbrecht & Son *v.* United States (2 Ct. Cust. Appls., 471, 473; T. D. 32226).

The only witness called was one of the importing firm, who stated of the articles in question as follows:

Q. How, if at all, do those differ from the natural immortelles?—A. They are dyed and prepared, that is all.

Q. Can you say whether or not this dyeing tends to preserve the merchandise?—A. It preserves them in such a way that they won't fall. * * *

Q. The immortelle is a flower, isn't it?—A. Yes, sir.

Q. And it has been dyed?—A. Yes, sir.

By Mr. LAWRENCE. It is a natural flower?—A. That is right; a preserved natural flower.

It is fairly within the lines of this testimony that the only preserving process applied according to the knowledge of this witness was the dyeing or coloring of the flowers which be it admitted so preserves them "that they won't fall." Lexicographic authority informs us that the name "immortelle" as applied to flowers is descriptive and refers to those various kinds which preserve their form and color for a long time and which are therefore called everlasting. The designation may include one or a thousand varieties, including as many colors. In their natural state they would no doubt be both "cut" and "ornamental" flowers within each of the paragraphs quoted. The court, however, is bound if possible to give each and every provision of the paragraph some effect and operation, and in this case deems the language in paragraph 438 "of whatever material composed" significant. The effect of that phrase, modifying the phrase "ornamental * * * flowers * * * not specially provided for" in the paragraph, extends the same to include all such not so provided for in the act composed in any part of a component material not common to the natural or cut flower. Dye or coloring matter is not common to cut flowers. Dyeing or coloring is effected by adding by artificial means a foreign and distinct material to all cut flowers which, while it may be said to be insignificant in quantity, is so significant in effect that it will make that ornamental which is not, and in every case of colored flowers is that which, and which alone, constitutes all the ornamental features of the article which are effected by its color. Congress has in many instances throughout the tariff laws differentiated duties according as the articles are dyed or colored or not, thereby recognizing such as a dutiable entity or material. This is particularly true in the textile, silk, and fabric provisions of the law and enters largely into those gradations of duty. While crude dyestuffs, the materials from which dyes are made, are expressly entitled to free entry (pars. 559 and 605), as are certain dyes (par. 487), the latter are as a rule made dutiable. (Pars. 15, 20, 22, and often under 480; T. D. 11219 and T. D. 27855.)

All of these provisions, however, attest dye as a *material* within tariff cognizance, which it is in fact, being held in solution and through that medium combined with and made a part of different articles of merchandise. Indeed, it is not a strange or unreasonable rule of tariff laws that factors of a rate do not exist at all in the article as imported, but, having been used in its manufacture, have disappeared entirely as a material, leaving, however, the effect valuable and dutiable as such produced by a previous presence. For example, in paragraphs 20 and 559, as affected by their provisos, it is provided that where alcohol is used in the preparation only of articles, though disappearing from the materials as imported, it

increases their dutiable status. Moreover, tariff differentiations as to amounts and rates of duty are adjusted not alone upon the basis of quantity of material but also upon the amount of labor required to produce the differentiated conditions. While at first blush a decree that the difference in dyeing or coloring alone of an article should raise the rate of duty upon the same article from 25 per cent to 60 per cent may seem startling, we need go no further than this paragraph to witness enactment of that exact congressional purpose. In the first provision of paragraph 438 "feathers and downs" and "bird skins or parts thereof with the feathers on," when "not * * * colored," are made dutiable at 20 per cent only, and "when * * * colored," 60 per cent. And so by the same paragraph, admittedly, cut flowers, if made into "wreaths," though not dyed, by labor and expense probably much less than that of dyeing or coloring, are raised thereby in duty from 25 per cent to 60 per cent. Indeed, it is within the spirit and, we think, the letter of the paragraph that coloring or dyeing which constitutes an article otherwise within the paragraph "ornamental" that such article shall thereupon be made dutiable at 60 per cent. It is agreeable to note that the United States Circuit Court of Appeals, Third Circuit, reached the same conclusion in a similar case under the tariff act of 1897. United States *v.* Bayersdorfer (175 Fed., 959).

*Affirmed.*