UNITED STATES v. KALTER MERCANTILE CO. ET AL. (No. 2239.)[1]

1. ENTIRETY—BOOTS AND STRAPS.

Rubber boots, fitted with rubber loops by means of which leather straps imported with them may be used to bind them at the feet and ankles, do not, in combination with the straps, become entireties. The boots remain boots and the straps remain straps.

2. RUBBER BOOTS—WEARING APPAREL—MANUFACTURES OF RUBBER.

Rubber boots are "wearing apparel" within the meaning of that expression in paragraph 256, tariff act of 1913, rather than manufactures of rubber under paragraph 368. Also they are within the description "made up or manufactured wholly or in part by the tailor, seamstress, or manufacturer," in paragraph 256.

3. COMPOSED OF COTTON OR OTHER VEGETABLE FIBER AND INDIA RUBBER.

In paragraph 256, tariff act of 1913, the provision for "wearing apparel * * * composed of * * * cotton or other vegetable fiber and india rubber" permits only an insignificant or negligible amount of other material.—Steinhardt & Bro. v. United States (8 Ct. Cust. Appls. 372; T. D. 37629) distinguished.

[1] T. D. 39680.

4. RUBBER BOOTS.

Rubber boots, lined with cotton fabric, are wearing apparel of cotton and india rubber under paragraph 256, tariff act of 1913, notwithstanding an insignificant value in nails, rivets, etc. Rubber boots of cotton and india rubber with wool linings are excluded from such classification by reason of the substantial value of the wool linings, and the decision of the board classifying them as rubber manufactures under paragraph 368 is affirmed.

## United States Court of Customs Appeals, May 31, 1923.

APPEAL from Board of United States General Appraisers, Abstract 45499.

[Modified.]

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Samuel Isenschmid*, special attorneys, of counsel), for the United States.
*Don R. Almy* for appellees.

[Oral argument May 9 and 10, 1923, by Mr. Lawrence and Mr. Almy.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges.

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this case was reported by the appraiser at the port of New York to consist of boots, composed of cotton and india rubber, and was assessed for duty by the collector at 30 per cent ad valorem, under the provisions of paragraph 256 of the tariff act of 1913, the pertinent part of which reads as follows:

Clothing, ready-made, and articles of wearing apparel of every description, composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, or of cotton or other vegetable fiber and india rubber, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise specially provided for in this section, 30 per centum ad valorem; * * *.

The importers duly protested the classification and assessment of the collector and claimed that the merchandise was dutiable at 10 per cent ad valorem, under the provisions of paragraph 368 of the act of 1913, the pertinent part of which reads as follows:

Manufactures of * * * india rubber or gutta-percha, * * * or of which any of them is the component material of chief value not otherwise specially provided for in this section, shall be subject to the following rates: Manufactures of india rubber or gutta-percha, commonly known as druggists' sundries, 15 per centum ad valorem; manufactures of india rubber or gutta-percha, not specially provided for in this section, 10 per centum ad valorem; * * *.

The importers introduced in evidence Exhibits 1 to 8, inclusive, as being representative of the different character and styles of boots included in the importation.

Exhibits 1 to 4, inclusive, are rubber hip boots, lined with a cotton fabric.

The importers sought to show that the boots in the importation, of which Exhibits 1 to 4 are representative, were not "composed of

cotton or other vegetable fiber and india rubber" within the meaning of that language as employed in paragraph 256, as judicially interpreted, for the reason that each boot was designed and manufactured with the purpose of having attached thereto a leather strap by means of a rubber loop fastened to the sole of the boot; that the purpose of the strap when properly fitted was to bind the boot to the foot and ankle of the wearer; that at the time of purchase of the boots by the importers representations were made, but not guaranteed, that the number of leather straps would correspond with the number of boots, the straps to be put on the boots for wear; and that the boots were imported in cases or bags containing 12 pairs each. Those in cases were accompanied by 12 pairs of straps, but the straps were not fastened to the boots, and in some instances there were less straps than boots; the boots imported in bags had straps attached by means of the rubber loop as described. That after importation the boots were sold with the straps.

The leather strap is 3 feet long and about seven-eighths of an inch wide. It has a metal buckle on one end and perforations in the other end for the evident purpose of fastening securely together the two ends of the strap, as well as to permit tightening or loosening of the same when so connected. Each boot has a rubber strap at the knee, attached by means of a rubber loop, the evident purpose of which is to bind the boot more tightly at the knee. On this strap there is a a metal buckle and a metal rivet. There is also a rubber strap attached to the top of the boot, evidently to be used to connect the top of the boot with a waist belt for the purpose of holding up the top of the boot. There is a metal buckle and not less than two nor more than five small metal rivets attached to this rubber strap in the different exhibits.

Exhibit 3 has four nails in the heel.

Exhibit 4 has five hob nails in the heel, while in Exhibits 1 and 2 no such nails are present.

Exhibits 5 and 7 are knee-length rubber boots and each is lined with a cotton fabric; these boots have no strap attachments of any kind.

Exhibit 5 has three nails in the heel and Exhibit 7 has five hob nails in the heel.

Exhibit 6 is a knee-length rubber boot, lined with a cotton fabric, and has attached at the top, by means of a rubber loop, a rubber strap, and attached to it are two metal rivets and a small metal buckle. It has five hob nails in the heel.

Exhibit number 8 is a rubber boot of knee length. It has one small metal rivet at the top and back and four round-head nails in the heel. It is lined with wool felt.

The testimony of both the Government and the importers shows that rubber is the component material of chief value in each of the exhibits.

The Government offered in evidence the testimony of an examiner of merchandise at the port of New York, who passed the merchandise in question in this case. His testimony was to the effect that during the 10 or 12 years he had been employed in the work of an examiner of merchandise, he could not recall any imported article of wearing apparel composed of cotton and india rubber that did not have some other material in it or attached to it, such as buttons, metal clasps, or hooks and eyes.

The collector classified the boots and the leather straps, as represented by Exhibits 1 to 4, inclusive, as entireties and as wearing apparel composed of cotton and india rubber under paragraph 256.

The Board of General Appraisers held that the boots with the leather straps, represented by Exhibits 1 to 4, inclusive, were entireties, that, "as they contain in substantial quantity material other than cotton and india rubber, they are accordingly excluded from classification under said paragraph 256 and are dutiable under paragraph 368 of the act of 1913 as manufactures in chief value of india rubber, not specially provided for."

The collector classified the merchandise represented by Exhibits 5 to 7, inclusive, as wearing apparel composed of cotton and india rubber, under paragraph 256.

The board held that the merchandise represented by Exhibits 5 to 7, inclusive, contained such a small amount of material other than cotton and india rubber, "such as the hobnails, rivets, and buckles," as to be "so insignificant in quantity, character and value, that the boots may be considered as made wholly of cotton and india rubber, and have, therefore, been properly assessed for duty under said paragraph 256."

The boots represented by Exhibit 8, which are lined with wool felt, were held by the board to be excluded from paragraph 256 because they were not made wholly of cotton and india rubber, and were held dutiable under paragraph 368 as manufactures in chief value of india rubber, not specially provided for.

The importers having failed, however, to prove on the hearing what proportions of the importations were represented by the Exhibits 1 to 4, inclusive, and Exhibit 8, as well as the proportions of the importations represented by Exhibits 5 to 7, inclusive, the Board of General Appraisers was unable to afford them any relief and the collector's assessment was allowed to stand. (T. D. 39157– G. A. 8543.)

Subsequently a rehearing was granted the importers, at which testimony was introduced as to the quantities of boots in the importa-

tions represented by Exhibits 1 to 4, inclusive, and Exhibit 8. The number of pairs of boots represented by 1 to 4, inclusive, and Exhibit 8, as found by the board, is set forth in the record as "Schedule A." The Board of General Appraisers thereupon held that the portions or quantities of boots in each importation represented by Exhibits 1 to 4, inclusive, and Exhibit 8, as shown in "Schedule A," were dutiable under paragraph 368 at 10 per cent ad valorem as manufactures in chief value of india rubber, and as to such boots sustained the protest. The other protests were overruled.

The first contention of the Government is that the boots and leather straps represented by Exhibits 1 to 4, inclusive, do not constitute entireties for duty purposes, and are classifiable as separate entities. The importers contend, however, that the boot was so designed, manufactured, and assembled, and the strap so identified with the boot, that the boot would not be complete without the strap, and that therefore the boot and strap should be classified as an entirety.

It can very well be argued that the leather strap, under some circumstances, would be of convenient use when attached to the boot, and, of course, as a matter of common knowledge, it is not difficult to understand that under very many instances and circumstances of wear it would prove to be somewhat of an inconvenience. The leather strap in appearance is like a leather belt. It is 3 feet long, about seven-eighths of an inch wide, has a buckle on one end, and perforations in the other end. It is a matter of common knowledge that leather belts are of different widths, lengths, and have attached thereto different styles and types of buckles, but all are used for the purposes for which leather belts are designed and manufactured, and those purposes are various and diversified.

It is clearly apparent from an examination of the exhibits in this case that any leather belt of proper width, regardless of the buckle attached thereto, could be used, if and when desired by the wearer of the boot, to bind the boot at the foot and ankle. If so used, could it be fairly argued that the leather belt had lost its identity and had merged with and become a part of the boot by assembly? Can it be fairly said that when the leather strap is attached to the boot by being passed through the rubber loop, it becomes so merged with the boot by assembly that it loses its identity as a leather strap? Certainly when thus united the boot and the strap do not merge so as to form a new or distinct article, having a different character or name. The boot remains a boot and the leather strap remains a leather strap, even when used together. The leather strap is attached to the *boot* for the purpose of binding the *boot* more tightly around the foot and ankle. It seems difficult to use descriptive language of the boot and the strap without conclusively showing the uses and purposes of each to be separate and distinct.

Many cases are cited in the briefs by both the Government and the importers upon the question of entireties and those cases and others have been carefully studied and analyzed.

We are of the opinion that even though it be considered that the boots and the straps were designed to be used together, when desired, and were sold together by the importers, yet, when used together, each retains its identity, name, and character; each is a separate entity; and when attached, each performs its separate function without loss of any of its essential characteristics. The boot remains a boot and the leather strap remains a leather strap. When separated the boot remains useful as a boot. It retains its commercial entity and remains complete in itself, a rubber boot. The leather strap also retains its essential character and commercial entity, and remains complete in itself, a leather strap, or, as has been suggested, a leather belt.

In the case of Dow *v.* United States (11 Ct. Cust. Appls. 249; T. D. 39077), "Hollow, ornamented earthenware figures of Buddha, each figure accompanied by a package of one hundred sticks of incense," imported together, were held not to be dutiable as entireties. In that case, when the incense sticks were separated from the figure of Buddha, each retained its identity, name, and character, and when attached or used together the figure of Buddha remained a figure of Buddha and the incense stick remained an incense stick. They did not merge when used together to form a new or distinct article, having a different character or name, although it may well be said that the incense sticks and the figures of Buddha could be conveniently used together.

In the case of Borgfeldt *v.* United States (11 Ct. Cust. Appls. 129; T. D. 38934), decorated porcelain tea sets and porcelain trays were imported together. This court held the articles to be separate entities; that the tea sets were complete without the trays and the trays were complete without the tea sets, and in that case, when used together, the tea sets remained tea sets and retained their separate identity, name, and character. Each performed its separate function without loss of any of its essential characteristics. When not used together each performed its separate function and retained its usefulness.

In the case of the Columbia Shipbuilding Co. *v.* United States (11 Ct. Cust. Appls. 281; T. D. 39085), certain steam engines and fans were imported, designed, and intended to be operated together. This court held that those articles were not dutiable as entireties. When not used together the engine was complete without the fan and retained its identity, name, and character, and the fan retained its name, identity, and character, and each retained its usefulness as a separate entity. When put together or assembled,

each retained its separate identity and essential characteristics. In other words, by assembly the fan did not merge with the engine nor the engine with the fan, so as to form a new or distinct article having a different character or name.

In the case of United States v. Auto Import Co. (168 Fed. 242), certain automobiles were imported in crates, each crate containing a complete machine, including four tires which had not been placed on the wheels. In that case the court held that the tires were a part of the automobile and therefore the importation was classifiable as an entirety.

It is contended by the importers that the automobile tires are in the same relationship to the automobile as the leather straps are to the boots in this case; but it must be observed that in the automobile case the automobile was not a complete entity until it had tires attached to it. Without tires the automobile was useless; with tires properly put on it was an automobile. Before the tires were put in place on the wheels the automobile was not a complete article of manufacture and assembly, but was only a part of an automobile. Therefore, when the tires were attached to the wheels and the wheels to the chassis and the other parts of the automobile properly assembled, a new and distinct article, having a new name and character, was the result.

In the case of Jackson v. United States (2 Ct. Cust. Appls. 475; T. D. 32227), certain merchandise was imported consisting of castings, 54 in number, representing the linings of nine fireplaces and their corresponding mantels. It was held by this court that the castings were dutiable as entireties because when placed together they constituted mantel and fireplace linings, and were not commercially fit for anything else. In other words, by a process of manufacture and assembly, several castings placed together lost their identity as castings and became a new article having a different name and character. What once was a casting became a necessary part of a fireplace lining, and without each of the castings the new article was incomplete and useless.

It seems to us that the two cases last referred to are clearly distinguishable from the case at bar. It follows, therefore, that the boots and leather straps represented by Exhibits 1 to 4, inclusive, are not dutiable as entireties but are classifiable as separate entities.

On the hearing before the Board of General Appraisers testimony was introduced by the importers in an effort to prove, first, that the merchandise in question was not commercially known as wearing apparel, or as cotton manufactures, but that it was commercially known and designated as rubber goods or manufactures of rubber; and, second, that the boots in question were not "made up or manufactured wholly or in part by the tailor, seamstress, or manufac-

turer," within the meaning of the language employed in paragraph 256, as judicially interpreted.

The Board of General Appraisers held against the importers on these contentions. We think the decision of the board on both of these questions was correct and is sustained by the evidence in this case and the law as defined by this court.—Lai Ming et al. *v.* United States (1 Ct. Cust. Appls. 5; T. D. 30770).

It seems clear from the evidence in the case that the rubber boots included in Exhibits 1 to 4, inclusive, considered as separate entities, have such a small amount of material, other than cotton or other vegetable fiber and india rubber, such as nails or hobnails, buckles, and rivets, as to be insignificant and negligible, and that the boots may be held to be articles of wearing apparel, composed wholly of cotton and india rubber, and as such properly dutiable under paragraph 256 of the act of 1913.

The classification of the merchandise represented by the Exhibits 5 to 7, inclusive, is not before this court for decision, as neither party has appealed from the decision and judgment of the Board of General Appraisers pertaining thereto.

The merchandise represented by Exhibit 8 has, in addition to a metal rivet and four round-head nails, a wool-felt lining.

The Government contends that this merchandise is properly classifiable under paragraph 256 as wearing apparel composed of cotton and india rubber, for the reason that the cotton and india rubber so far predominate over the wool-felt linings that they may be said to be wearing apparel substantially wholly of cotton and india rubber.

In the case of Steinhardt & Bro. *v.* United States (8 Ct. Cust. Appls. 372; T. D. 37629) this court held that the words "made of" may be held to mean "wholly of only or include wholly and in chief value of, according to the context." In that case the court had under consideration the following language in paragraph 262 of the act of 1913:

\* \* \* Made of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, or of cotton or other vegetable fiber and india rubber \* \* \*.

The phraseology in paragraph 262 is identical with that in paragraph 256, except that the words "made of" are used in 262 while the words "composed of" are found in the same connection in paragraph 256. In the case above referred to the court held that "made of" cotton or other vegetable fiber and india rubber meant made wholly of such.

The cases cited in the Government's brief are clearly distinguishable from the Steinhardt case. The statutory phrase "composed of" as used in paragraph 256 under consideration here, has a very different meaning as found in the context than the phrase "composed of" in

the paragraphs under consideration in the cases cited and relied upon by the Government.

In paragraph 256 we find "* * * Composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component of chief value, or of cotton or other vegetable fiber and india rubber * * *," while in the cases relied upon by the Government the statutory phrase "composed of" in the paragraphs under consideration was not modified in any instance by phraseology such as is found in paragraphs 256 and 262. The statutory phrase "composed of" cotton or other vegetable fiber and india rubber, as found in paragraph 256, means composed wholly of such material, permitting only an insignificant or negligible amount of other material to be added thereto.

From the evidence in this case it appears that the boots with the wool-felt linings, of which Exhibit 8 is representative, are composed of a substantial amount of material other than cotton and india rubber and therefore can not be said to be composed wholly of cotton and india rubber within the meaning of paragraph 256, and are classifiable as found by the board under paragraph 368 of the act of 1913.

The decision of the Board of General Appraisers is modified, being reversed in so far as it refers to the classification of the merchandise represented by Exhibits 1 to 4, inclusive, and being otherwise affirmed, and the case is remanded for proceedings not inconsistent with the views herein expressed.