(C. D. 1043)

SHEFFLER MERCHANDISE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided January 31, 1947)

*John D. Rode* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard H. Welsh* and *Herbert M. Rosenberg*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: It is the contention of the plaintiff that certain articles invoiced as "celluloid thumb tacks" were improperly classified by the collector of customs as dutiable at the rate of 4½ cents per pound under the provision in paragraph 331 of the Tariff Act of 1930 for "thumb tacks, of two or more pieces of iron or steel, finished or unfinished." The claim relied upon by plaintiff is that the articles

are properly dutiable at nine-tenths of 1 cent per pound under the provision in said paragraph for "tacks * * * not specially provided for." Both rates represent an increase over those imposed by statute, and became effective by virtue of a proclamation (62 Treas. Dec. 676, T. D. 46051) promulgated by the President under authority conferred upon him by section 336 of said act.

It is not disputed that the thumbtacks in controversy, represented by exhibit 1 herein, are composed of two pieces of iron or steel, and that the heads thereof are covered with a nonmetallic substance. Indeed, it is only because of such head covering that the plaintiff insists that the imported articles are not the kind of thumbtacks contemplated by the *eo nomine* provision therefor in said paragraph 331. This covering is frequently referred to throughout the record as consisting of celluloid, but there is no positive proof of that fact. However, there seems to be little or no doubt that it is composed of some nonmetallic substance, since a lighted match applied thereto shows it to be instantly and highly inflammable. When asked why such covering is used, Charles Sheffler, who appeared for plaintiff and the only witness called herein, said:

It serves the same purpose as the brass but for decorative purposes besides using as a pin to fasten the item, it is used for decorative purposes. Also, it protects the pin from going through the head because in many cases, a lot of people will not buy a brass-headed thumb tack.

The witness stated that for upwards of 20 years he has bought and sold thumbtacks, some with the heads covered and others with the heads uncovered; that the former cost about 33⅓ per centum more than the latter; that thumbtacks also come with the heads "brassed," which imparts to the metal the yellowish color appearing on the thumbtacks comprising exhibit 1. He then testified:

Q. What is done to give them that finish?—A. The brass tacks?

* * * * * * *

The WITNESS: I saw these yellow sheets. These sheets were yellowish and then where the head was stamped from—if the tack was sold as a brass-plated finish, in other words, without the celluloid head, they were put in a barrel and tumbled, which of course, gave them a little brighter finish. Celluloid tacks, they didn't do it because the cover, I mean the covered tack, they didn't tumble these tacks. All they wanted to have the bottom of the tack look brighter.

* * * * * * *

X Q. Now, your last question, you just simply say that the celluloid that is represented by this exhibit are different than some other kind of a tack? You are talking about tacks other you said, other than the celluloid head?—A. They are all the same but in case they were sold without the color, they are made all the same way, but in case they wanted them to be covered, they added on that cover on the top of the original two-piece tack.

X Q. They added on the cover, nothing else was done to any of them?—A. On special request, if you wanted them a little brighter, he had them tumbled first and we put the head on afterwards.

With these facts before us, the issue resolves itself into a question of law whether ordinary thumbtacks composed primarily of two pieces of iron or steel, when finished by covering the heads with a nonmetallic substance, as in the present case, are removed from the statutory provision for "thumb tacks, of two or more pieces of iron or steel, finished or unfinished." If so, they would seem to be within the provision for "tacks * * * not specially provided for," invoked by plaintiff.

In support of its contention, plaintiff cites the following cases: *McLaughlin & Freeman* v. *United States*, 18 C. C. P. A. (Customs) 128, T. D. 44094; *United States* v. *McLaughlin & Freeman*, 20 C. C. P. A. (Customs) 263, T. D. 46059; *Bayersdorfer & Co.* v. *United States*, 4 Ct. Cust. Appls. 446, T. D. 33875; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680; *United States* v. *A. Smith Son Co.*, 20 C. C. P. A. (Customs) 206, T. D. 45985; *United States* v. *E. H. Sargent & Co., Inc.*, 20 C. C. P. A. (Customs) 172, T. D. 45774; *United States* v. *State Forwarding & Shipping Co.*, 14 Ct. Cust. Appls. 153, T. D. 41690; *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769; *United States* v. *Sutherland International Despatch et al.*, 21 C. C. P. A. (Customs) 264, T. D. 46790; *Sol Raphael* v. *United States*, 23 C. C. P. A. (Customs) 253, T. D. 48110; *Altman & Co.* v. *United States*, 11 Ct. Cust. Appls. 102, T. D. 38749, and the same on rehearing id. 174, T. D. 38960; *In re Gribbon*, 53 Fed. 78; *Wilson et al.* v. *United States*, 57 Fed. 199; and *United States* v. *Jonas et al.*, 83 Fed. 167.

We have examined each of the cited cases and, in our opinion, none of them would seem to apply to the questions of fact and law here presented.

In *McLaughlin & Freeman* v. *United States, supra*, photographs on glass which had been gilded on the back and to some extent on the front borders were held not to be photographs. But in the later case of *United States* v. *McLaughlin & Freeman, supra*, a contrary conclusion was reached based on proof that the gilding process was necessary to the finishing of the photographs. Commenting on these two cases, plaintiff in its brief filed herein states:

> This leaves the first decision to stand so far as the tacks in question are concerned, inasmuch as the celluloid is not necessary to finish the tacks, but is the result of adding to tacks of two or more pieces of iron or steel a piece of another material for substantial reasons, as shown by the record.

To say that "the celluloid is not necessary to finish the tacks" in the instant case would seem to beg the question, particularly where it seems to have been the evident intention and design of the manufacturer to make celluloid-covered tacks. In the circumstances, to have eliminated the celluloid would have left the tacks unfinished.

In the *Bayersdorfer* case, *supra*, it was held that immortelles— natural or cut flowers—which had been dyed to preserve them, were

not classifiable as cut flowers, because of the addition thereto of the dye, a substance not common to natural flowers. By analogy, plaintiff argues that "the addition of the celluloid, a material not common to tacks made of two or more pieces of iron or steel, removes the tacks from that class." Again, it would seem to do violence to the facts to say that it was not necessary to add the celluloid, if the design is to make celluloid-covered thumbtacks of two or more pieces of iron or steel. The presence of the nonmetallic head covering does not make the instant thumbtacks any the less primarily constructed of iron or steel.

In *United States* v. *Kalter, supra,* boots composed of cotton and india rubber with a wool lining were excluded from a tariff provision for "wearing apparel * * * composed of * * * cotton or other vegetable fiber and india rubber" because of the presence of the wool, a material not named in said provision. The court was of the opinion that the quoted language permitted the addition of "only an insignificant or negligible amount of other material" to those mentioned therein.

Here, the provision under consideration reads "thumb tacks, of two or more pieces of iron or steel, finished or unfinished." It does not contain the words "composed of," nor is its scope limited to thumbtacks of two or more pieces of iron or steel and nothing else. As we read it, its terms are satisfied if it be shown (1) that the article is a thumbtack, and (2) that it is constructed of two or more pieces of iron or steel, either of which metals is the component material of chief value. Such a thumbtack would remain in the provision even though the named metals be plated with some other metal, or the head thereof covered, as in the case of exhibit 1 herein, with a nonmetallic substance.

A somewhat analogous situation to that here present arose in the case of *E. J. Brooks & Co.* v. *United States,* 64 Treas. Dec. 814, Abstract 24853. There, certain nails were classified under paragraph 397 of the Tariff Act of 1930 as articles, not specially provided for, in chief value of metal. The particular provisions in paragraph 331, *supra,* invoked by the plaintiff called for "iron or steel nails, not specially provided for" or "nails * * * made of iron or steel wire, not less than one inch in length nor smaller than sixty-five one-thousandths of one inch in diameter." In describing the articles there under consideration we said: "The shanks in these nails are of iron or steel and the heads are covered with lead." As to the applicable rule of law in the premises we observed:

The words "of iron or steel" ordinarily mean predominantly or in chief value of either of said metals. As held in *Vantine* v. *United States* (3 Ct. Cust. Appls. 488, T. D. 33124):

The general rule appears to be well settled that when a tariff statute provides for duty upon an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of

which the specified material is that of chief value or is the predominant one therein. Arthur *v.* Butterfield (125 U. S. 70), *In re* Wise (93 Fed. Rep. 443), Drew *v.* Grinnell (115 U. S. 477), Schiff *v.* United States (99 Fed. Rep. 555), Robertson *v.* Edelhoff (91 Fed. Rep. 642).

\* \* \* In order to prevail under paragraph 331, and in view of the nature and character of the sample in evidence, we are satisfied that the onus was upon the plaintiffs to prove that the iron or steel in these nails constituted the component material of chief value. Having failed to establish that essential fact, it follows that all claims must be, and they hereby are, overruled, and judgment will be rendered accordingly.

In *United States* v. *Smith, supra,* certain metal pins with glass heads, with threaded points to which were attached metal guards with glass tips used to fasten or pin a portion of the brims to the crowns of women's hats and also to ornament them, were held to be something more than "pins with heads of glass," namely, pins with glass heads and glass tips.

By the same token the plaintiff contends that the tacks in controversy are something more than thumbtacks of two or more pieces of iron or steel because of the presence of the nonmetallic covering on the heads of the tacks. But this view loses sight of the fact that in the *Smith* case, *supra,* the pins with glass heads lost their tariff identity as such by reason of the addition thereto of the metal guards with glass tips. In the case at bar, the articles were thumbtacks, both before and after the addition of the nonmetallic substance which was applied merely to finish them.

To hold otherwise would mean that a thumbtack of two or more pieces of iron or steel ceases to be such for tariff purposes even if only a brass coating or plating is applied thereto. We do not believe that such was the intent of the law.

In *United States* v. *Sargent, supra,* it was held that a graduated tube for measuring the quantity of material contained therein was not a tube within the meaning of the statute. Here, again, we are confronted with an article which was originally a tube for general use, but which, as a result of further manufacturing processes, was converted into a new article having a definite use different from that for which tubes in general are employed. Such is not the case with the instant thumbtacks.

Plaintiff points out that in the case of *United States* v. *State Forwarding & Shipping Co., supra,* leather cut to forms and dyed for use in book binding was held to be "leather cut to form suitable for conversion into manufactured articles," but that that conclusion was reversed in *Ringk* v. *United States, supra,* wherein the court said:

At the time the opinion in the *State Forwarding & Shipping Co.* case was handed down the court was of unanimous opinion that a mere coloring or dyeing of leather was not a sufficient processing thereof to remove such leather from the designation of "leather cut into forms." On more mature consideration of the subject,

however, we have concluded this position is not well taken, but that such processing, if done after the leather has been cut into forms, should be considered as such an advancement.

The *Ringk* case, *supra*, would seem to be here readily distinguishable. There, as pointed out by the court, the dyeing or coloring was applied to the leather after it had been cut into forms, thus advancing its condition to that extent. It was no longer merely leather cut into forms; it became something more for tariff purposes. Here, the thumbtacks under consideration require the application of this non-metallic substance in order to complete them as such. Until subjected to that process, the tacks are in the process of being finished.

In the *Sutherland* case, *supra*, certain brass channels lined with felt were held to be something more than the brass channels contemplated by paragraph 381 of the Tariff Act of 1930. It was found that the articles had been dedicated to the single use of being employed in rectangular windows of marine craft. Of such articles the court said:

As a matter of fact, it appears from the testimony in the case at bar that the processing of the brass channels by the addition of felt in the manner described created a new article, viz, "silent window channels," and was dedicated solely to a use different than the use of brass channels not so processed. That the use of these articles is different than the use of brass channels is shown by the testimony of appellee's witness, wherein he stated that in order to use brass channels for marine windows it would be necessary to process them further by placing felt in them.

In the present case, the mere covering of the heads of these thumbtacks did not create a new article. They still remained primarily thumbtacks of two pieces of iron or steel.

In the *Raphael* case, *supra*, rugs of cotton, jute, and artificial silk were excluded from the provision in paragraph 1022 of the Tariff Act of 1922 for "rugs, made *wholly* of cotton, flax, hemp, or jute, or a mixture thereof" [italics supplied] because of the presence therein of artificial silk. Commenting on this case, the plaintiff, in its brief herein, says:

* * * Now the mixture provision was not limited by the word "wholly". The provision in question was for rugs made of a mixture of cotton, flax, hemp, or jute. Nevertheless the court held rugs made in part of a material not named were excluded therefrom. So the tacks, which are in part of a material not named in paragraph 331, are, by a parity of reasoning excluded therefrom.

What the appellate court in that case said was:

We agree with the conclusion of the trial court which is expressed in the following apt language:

We fail, however, to see wherein the provision of said paragraph 1022 for carpets and rugs "made wholly of cotton, flax, hemp, or jute, or a mixture thereof" can possibly include any carpets or rugs composed in part of artificial silk, as said provision expressly names the components of which such carpets or rugs must wholly be made, and does not include artificial silk. As the provision provides in effect for rugs, etc., made wholly either of cotton, flax, hemp, or jute, the phrase "or a mixture thereof", which modifies the enumerated subject matter.

can only mean a mixture wholly of two or more of the said enumerated component materials, and no others, and under no reasonable interpretation in our opinion, can it be said to mean rugs, etc., in chief value of any or all of said materials. We think this is only too obvious from the plain language of said provision, as otherwise the word "wholly" in said provision would in effect be nullified.   *   *   *

Inasmuch as the thumbtack provision herein is not specifically *limited* to those *wholly* of iron or steel, we regard the decision in the *Raphael* case inapplicable here.

It is further stated in plaintiff's brief that—

Another somewhat analogous line of cases is the one relating to provisions of law stating in what manner goods shall be manufactured. For instance a provision for goods "made on the Nottingham lace-curtain machine" does not include such as are in chief value of merchandise made on said machine but only such as are made wholly on said machine. *Altman* v. *United States*, 11 C. C. A. 102 and 174.

While that statement may not successfully be disputed, we fail to see the applicability of the principle enunciated to the question in issue herein. Similarly, plaintiff makes this observation:

Likewise, handkerchiefs embroidered only and handkerchiefs hemstitched only are not covered by a provision for "embroidered and hemstitched handkerchiefs"

citing in support of that statement the cases of *In re Gribbon, supra; Wilson et al.* v. *United States, supra,* and *United States* v. *Jones et al., supra.* The provisions of law there construed involved hemstitched *and* embroidered handkerchiefs and not hemstitched *or* embroidered handkerchiefs. Obviously those decisions are not pertinent here.

We regard our ruling in *Sprouse-Reitz Co., Inc.* v. *United States,* 10 Cust. Ct. 265, C. D. 766, as here applicable. There, certain screws commonly called wood screws, composed of brass, were claimed to be classifiable under a tariff provision for "screws, commonly called wood screws, of iron or steel." In overruling the claim we said:

Fortunately, the law in the premises is now fundamentally established. It requires that the words "of iron or steel" be interpreted to mean wholly or in chief value, or predominantly composed, of either of said metals. As stated by our appellate court in *United States* v. *Guy B. Barham Co.,* 26 C. C. P. A. 83, T. D. 49614:

It is well settled that the general rule is that when a tariff statute provides for "an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein," and the words "composed of," "made of," and "kindred expressions" in tariff statutes may, according to the context, mean wholly or substantially wholly of a specified material, or wholly or in chief value of such material. *Vantine & Co.* v. *United States,* 3 Ct. Cust. Appls. 488, T. D. 33124; *Kenyon Co.* v. *United States,* 4 Ct. Cust. Appls. 344, T. D. 33529; *Blumenthal & Co. et al.* v. *United States,* 5 Ct. Cust. Appls. 327, T. D. 34529; *Steinhardt & Bro.* v. *United States,* 8 Ct. Cust. Appls. 372, T. D. 37629; *Simiansky & Co.* v. *United States,* 9 Ct. Cust. Appls. 288, T. D. 38224; *United States* v. *Kalter Mercantile Co. et al.,* 11 Ct. Cust. Appls. 540, T. D. 39680; *United States* v. *Linen Thread Co.,* 13 Ct. Cust. Appls. 359, T. D. 41257.

We there pointed out that—

In the last of the above authorities cited by the appellate court (*United States* v. *Linen Thread Co.*), one of the provisions construed called for "Plain-woven fabrics *   *   * of flax   *   *   *  ." The court held that "There being nothing in the

context which requires that the words 'of flax' be interpreted as meaning 'substantially wholly' of flax, they should be interpreted to mean 'wholly or in chief value of flax' in accordance with the general rule." The circumstance that companion paragraphs expressly provided for fabrics in chief value of flax as well as for fabrics "of flax" was held not to require a construction of paragraph 1011 of the Tariff Act of 1922 that would limit it to the fabrics mentioned therein when made wholly of flax. The general rule that a provision for articles of a specified material included those in chief value of that material was held applicable.

In the present case the screws in question were classified under the provision in paragraph 397 of the Tariff Act of 1930 for "articles or wares not specially provided for, if composed wholly or in chief value of * * * brass." That they were so composed was admitted by counsel for the plaintiff * * *.

In accordance with the above-mentioned authorities, it would appear that the general rule applicable in construing a tariff statute which provides for an article of specified material, without declaring to what extent it must be composed of that material, is that it must at least be confined to merchandise of which the specified material is that of chief value or the predominant one therein.

The provision in issue herein, paragraph 331, *supra*, does not disclose to what extent the involved thumbtacks must be composed of iron or steel, but simply provides for "thumb tacks, of two or more pieces of iron or steel." Thus, there is nothing in the phraseology which requires that the words "two or more pieces of iron or steel" be interpreted as meaning *substantially wholly* of iron or steel. Consequently, said provision should be interpreted to mean wholly *or in chief value* of iron or steel, and we so hold.

In this connection it may be desirable to inquire concerning the precise nature and character of the merchandise which formed the subject of investigation by the United States Tariff Commission based upon the report of which the President issued his proclamation above mentioned. This information may be found in "Report No. 56, Second Series" made by the Commission to the President. Extracts from the "Summary of Information Obtained in the Investigation" attached to said report follow:

Scope of the Investigation.

The investigation as ordered by the commission embraces all upholsterers' nails, chair glides, and thumb tacks, finished or unfinished, dutiable under paragraph 331 of the tariff act of 1930. These include the following articles when made of two or more pieces of iron or steel: (1) Upholsterers' nails, (2) 1-prong chair glides, and (3) thumb tacks. They also include (4) 1-piece thumb tacks of iron or steel, and (5) thumb tacks in chief value of other materials.

The investigation does not include solid-brass upholsterers' nails and 1-piece, 3-prong chair glides, which are dutiable under paragraph 397 as manufactures of steel not specially provided for.

*         *         *         *         *         *         *

Thumbtacks are polished, plated, enameled, or covered with celluloid. These *finishing* processes are automatic. [Italics supplied.]

*         *         *         *         *         *         *

Five general types of thumb tacks are imported and represent 74 per cent of the total imports. The five types are as follows:

1. The "gura" tack, brass-plated, with shank riveted to head. * * *
2. The "rodi," a gura tack with brass-plated cap crimped over the head of the tack.
3. The celluloid covered tack, a gura tack with a celluloid cap.
4. The solid-head tack.
5. The 1-piece or cut-out tack.

* * * One type of celluloid tack offered for sale by a domestic producer is an imported gura tack capped with celluloid in the United States before being sold. * * *

In the various statistical tables giving data showing such factors as quantity, value, production during given years, imports, consumption, and ratio of imports to consumption, the individual articles are invariably described by their particular names and as to their condition, whether enameled, plated, celluloid covered, etc. The concluding observation of the Tariff Commission in its summary reads:

Table 8 gives the average weight in pounds per thousand of each group of articles and compares foreign invoice prices, taken as evidence of foreign costs, with the high and low domestic costs of production as already shown in Table 6. The cost differences shown on each item are subject to all the qualifications stated on page 10 with respect to the range of domestic costs on specific nails and tacks under conditions prevailing in 1931. They suffice, however, to indicate clearly that, with all adjustments which might be made because of the high overhead prevailing in 1931 and because of other factors, the cost differences in upholsterers' nails and 2-piece thumb tacks would remain much greater than could be equalized by the maximum increase in duty from 3 to 4½ cents per pound permitted by the statute. * * *

In passing, while it is in no sense authoritative in the premises, it is noted that the Tariff Commission, in its discussion of the provisions of paragraph 331, *supra*, apparently regarded the rule of chief value as applicable thereto.

Moreover, if plaintiff's contention be sound that "In the case at bar no question of chief value is before the court," then it should be held that the *eo nomine* provision for thumbtacks must be strictly limited to those "of two or more pieces of iron or steel" and no other material or substance. This would seem to exclude thumbtacks so composed which may be plated, enameled, coated, or covered with celluloid or other nonmetallic material, even if iron or steel be the component of chief value in the articles. Such construction would unquestionably curtail the scope of the provision very materially. It would virtually render meaningless the word "finished," since it is entirely likely that the pertinent thumbtacks may well be completed with materials other than iron or steel.

Moreover, the interpretation urged by plaintiff will find little or no support in the avowed general purposes of the present tariff law

as declared in its title, namely: "To provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes." It would scarcely encourage domestic thumbtack manufacturers to discover that the *eo nomine* tariff classification for their products when imported contemplated only those of iron or steel and of no other material or substance and therefore excluded thumbtacks, finished as in the present case with a nonmetallic substance. Thumbtacks so finished would then pay but nine-tenths of 1 cent per pound, whereas precisely the same tacks not so finished would pay 4½ cents per pound. That view of the law would neither "encourage the industries of the United States" nor "protect American labor." On the contrary, it would seem to make it worth while for importers to have the foreign manufacturers do all the finishing operations abroad and thus entitle thumbtacks so completed to the very much lower rate of duty. In a word, it would in a great measure render ineffective the word "finished." In our opinion, there is nothing in the law to warrant any such interpretation. Rather it may be said of it, what Mr. Justice Brewer observed concerning the provision under consideration in *Arnold* v. *United States*, 147 U. S. 494, that "The idea which runs through this statute is well known to be that of protection to our manufactures."

We are, therefore, of the opinion that we should adhere to our decision in *United Syndicate of Amer. Importers, Inc.* v. *United States*, 63 Treas. Dec. 1381, Abstract 23463, wherein the precise issue here presented was decided adversely to the plaintiff's contention therein. Hence, we follow that authority and overrule all claims of the plaintiff and affirm the decision of the collector of customs.

Judgment will be entered accordingly.