(C.D. 2123)

TRANS ATLANTIC COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 8, 1959)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *George Cochran Doub*, Assistant Attorney General (*Shelia N. Ziff* and *William J. Vitale*, trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The question presented in this case is whether certain corner brackets and soffit brackets for use with "Taco" door closers are, for tariff classification and import duty purposes, parts of

said door closers or articles not specially provided for, composed wholly or in chief value of base metal.

Upon importation, the collector of customs classified said articles within the provisions of paragraph 397 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 397), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as articles or wares not specially provided for, whether partly or wholly manufactured, composed wholly or in chief value of base metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, and assessed duty thereon at the rate of 21 per centum ad valorem.

Plaintiff relies upon the claim in its protest that the merchandise should be classified in paragraph 372 of said act (19 U.S.C. § 1001, par. 372), as modified, *supra*, within the provision for parts of machines, finished or unfinished, not specially provided for, and subjected to duty at the rate of 13 per centum ad valorem.

Norman A. Millman, secretary-treasurer of the plaintiff company and ultimate consignee of the instant merchandise, the only witness called to testify, appeared on behalf of the Trans Atlantic Company.

In addition, the following exhibits were received in evidence:

For the plaintiff—

Exhibit 1—A soffit bracket representing one of the two types of articles in issue.

Collective exhibit 2—A demonstration model simulating a door, attached to which is a "Taco" door closer which is affixed to the upper right-hand corner of the door frame by means of a corner bracket, said bracket being representative of the other type of merchandise in controversy.

For the defendant—

Exhibit B—A diagrammatic pattern marker for use as a guide in affixing a "Taco" closer to a door.

Exhibit C—A "Guarantee Registration Card" form.

Exhibit D—A 4-page circular of instructions for mounting "Taco" door closers on right-hand opening or left-hand opening doors, whether said doors open inwards or outwards.

It has been agreed by the parties hereto that the "Taco" door closers, with which the articles in controversy are to be used, are, in fact, "machines." It remains for us to determine whether the imported corner brackets and soffit brackets used in mounting said door closers are parts of machines.

From the record, it appears that door closers are designed for use on doors which open outwards as well as inwards. In the case of doors that open inwards, the door closer will function efficiently in most instances without the use of a corner bracket, soffit bracket, or similar plate, by merely mounting the door closer on the hinge side of the

door and affixing the lever arm of the closer to the door frame. However, when used on doors that open outwards, according to Millman's testimony, such a bracket is necessary and essential to the efficient functioning of the door closer inasmuch as, in such instance, the door closer is usually attached to the bracket or plate, and the lever arm of the closer is fastened to the inside of the door.

It was the witness' testimony, also, that the brackets are manufactured expressly for mounting a particular size and type of "Taco" closer. The instant corner brackets are identified as sizes 2, 3, and 4, and the soffit brackets as sizes 2, 3, 4, and 5, the significance of the size numbers being that the brackets are produced for use in combination with the corresponding size door closer only.

It was pointed out that the brackets themselves demonstrate their specialized use by the fact that the templating of the holes on the bracket for insertion of screws must coincide with the templating of the holes on the door closers which are to be mounted on them.

The witness stated that the only method of installing a given size "Taco" closer to a door, where the door opens outwards and the closer is to be on the inside, is with the use of a soffit, corner, or other style bracket. The normal installation is without the use of a bracket for doors opening inwards.

Closers and brackets are imported as two separate items, and the purchaser of a "Taco" closer for a door opening inwards buys the article without the bracket.

The witness did not know of any uses for corner and soffit brackets other than in connection with "Taco" closers of a specified size.

Of the several cases cited by the parties to this action and others reviewed independently by the court, it is our opinion that the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851, is dispositive of the present controversy. In the *Willoughby* case, it was held that camera tripods were not parts of cameras for tariff purposes, even though said tripods were especially designed for that purpose and said tripods were provided with screws adapted to be received in sockets in the cameras. It was there stated—

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. *Welte & Sons* v. *United States*, 5 Ct. Cust. Appls. 164, T.D. 34249; *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T.D. 41673; *Peter J. Schweitzer, Inc.* v. *United States*, 16 Ct. Cust. Appls. 285, T.D. 42872, and cases cited therein; *United States* v. *John Wanamaker*, 16 Ct. Cust. Appls. 548, T.D. 43266.

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. *Columbia Shipping Co. et al.* v. *United States*, 11 Ct. Cust. Appls. 281, T.D. 39085; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T.D. 39680. [Italics supplied.]

The court also stated—

> We are of opinion, therefore, that, although it may be necessary to use *tripods* as *supports* for the involved *cameras,* tripods are not, for that reason, integral, constituent, or component parts of such cameras. The most that can be said is that the two articles—a tripod and a camera—are designed to be used together, one as a support for the other, and that they are chiefly so used. [Italics supplied.]

In reaching its conclusion in the *Willoughby* case, *supra*, the appellate court gave consideration to the following duality of articles commonly used together but neither of which constituted a part of the other—

> Typewriter desks are designed and constructed to be used with typewriters, and frequently have attachments so that typewriters may be joined to them. Furthermore, typewriters must be rigidly supported in order that they may be used properly, yet no one would suggest that ordinary typewriter desks were integral, constituent, or component parts of typewriters, although, no doubt, users of ordinary typewriters would testify that typewriter desks were essential to the proper use of such typewriters.

> A pianist would undoubtedly testify that a piano bench or stool was essential to the proper use of a piano. It is obvious, however, that a piano bench is not an integral, constituent, or component part of a piano.

> Stationary engines require rigid supports. Such supports may be made of wood, concrete, or other material. When in use, the engine is attached to its support, but such support is, obviously, not a part of the engine. The two articles are merely designed to be, and are, used together.

The corner and soffit brackets in the instant case have been shown by the record to be specially designed for use with corresponding size door closers and are necessary, in most instances, where "Taco" closers are to be used on doors opening outwards. Furthermore, they are clearly supports for said door closers as were the tripods the supports for cameras in the *Willoughby* case, *supra*. However, the corner and soffit brackets play no part in the *functioning* of the "Taco" device as a door closer, *per se.*

Although designed and constructed to be used together, the corner and soffit brackets are not integral, constituent, or component parts of the door closers to which they are joined, without which said door closers could not function as such articles. Each maintains its commercial identity and, as shown by the record, each is always sold separately.

Upon the record before us and following the principles of the *Willoughby* case, *supra*, we find and hold that the corner and soffit brackets in issue are not parts of door closers and, therefore, are not parts of machines, as alleged by plaintiff herein. That claim in the protest is, therefore, overruled. The alternative claim that said articles are structural shapes within the purview of paragraph 312

of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 312), as modified, having been abandoned, is dismissed.

Judgment will be issued accordingly.