UNITED STATES *v.* E. LEITZ, INC. (No. 4193) [1]

United States Court of Customs and Patent Appeals, March 6, 1939

*Webster J. Oliver*, Assistant Attorney General (*Joseph E. Weil*, special attorney, of counsel), for the United States.

*Walden & Webster* (*Edward F. Jordan* of counsel) for appellee.

[Oral argument February 10, 1939, by Mr. Oliver and Mr. Jordan]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of photographic range finders, known as "Fokos." They were classified by the collector at the port of New York under paragraph 228 (b) of the Tariff Act of 1930 as "optical instruments, frames and mountings therefor, and parts of any of the foregoing * * *" at 45 per centum ad valorem.

A large number of entries are involved, and separate protests were filed against the liquidation of each entry, claiming the merchandise

[1] C. A. D. 49.

to be dutiable under the provision of paragraph 1551 of said tariff act for "Photographic cameras and parts thereof * * *" at 20 per centum ad valorem. While alternative claims were made in the protests, none of them were pressed before the Customs Court or here.

Before the Customs Court all of the protests of appellee were consolidated for the purposes of trial. Said protests also covered other merchandise, concerning which a stipulation was made upon the trial, and such merchandise is not here involved.

The Customs Court sustained the protests insofar as they pertained to the photographic range finders and other merchandise embraced in said stipulation. Judgment was entered accordingly and the Government has appealed, but its assignments of errors embrace only the photographic range finders.

So much of paragraphs 228 (b) and 1551 of the Tariff Act of 1930 as is here pertinent reads as follows:

PAR. 228. * * *

(b) * * * all optical instruments, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, not specially provided for, 45 per centum ad valorem.

PAR. 1551. Photographic cameras and parts thereof, not specially provided for, 20 per centum ad valorem: * * *.

Upon the trial before the Customs Court, both parties took testimony. Appellee offered in evidence a sample of the involved range finders, which was marked Exhibit 1; also a camera upon which Exhibit 1 was designed to be used, which camera was marked Illustrative Exhibit A. Appellee also offered in evidence a catalog issued by it, marked Illustrative Exhibit B.

Exhibit 1 is a small, oblong, metal instrument in the front of which, at opposite ends, are small windows. On the rear of the instrument, in the center thereof, is a wheel which is rotatable. Also in the rear face of the instrument, and directly behind the left front window, is a similar window, this window in the rear of the device being the one to which the eye is addressed in using the instrument. Within the instrument are two prisms, one of which is rotatable, so that the angular relation between the prisms can be changed. The rotation of the movable prism is controlled by rotation of the wheel hereinabove referred to. The action of the device is such that, for an object any given distance from the point of viewing, there is one angular relation of the prisms which will cause the two images received through the front windows to coincide and appear as one. If the wheel is rotated so that this angular relation is varied, two images appear. Upon the wheel above noted, near the periphery thereof, is a series of distance marks, as follows: 2' 6'', 2' 9'', 3, 3' 6'', 4, 5, 6, 7, 8, 10, 12, 15, 20, 30, 50, 10 [100], 300, and infinity. Between the 2' 6'' mark and the

infinity mark, which are adjacent since they are at opposite ends of the scale and the scale forms almost a total circle, is the word "Feet." Upon the case of the instrument, adjacent to said wheel, is a small fixed stud having a diametrical line running toward said wheel. This line is the indicating index which is used with the scale on the wheel in order to read the instrument when it has been focussed on a desired object. In use the device is operated as follows: the particular object the distance of which is to be determined is viewed through the rear window of the range finder; unless the instrument happens to be set at just the proper position, two images will be apparent to the user. Thereupon the wheel is rotated in that direction which serves to reduce the displacement of the two images, and this rotation is continued until that point is reached where the two images coincide in the viewing window, so that only a single image is then visible. The scale on the wheel is then viewed and the distance mark opposite the index line on the fixed stud should indicate the distance of the object in question from the point at which the range finder is being used. Of course, where the index line is intermediate adjacent distance marks on the wheel as, for example, between the 30-foot and 50-foot marks, it is a matter of judgment on the part of the user as to what the exact distance is. It should be said in passing that below the wheel, and projecting from the lower face of the instrument, is a stud or pin, the purpose of which will hereinafter be noted.

Illustrative Exhibit A is a miniature camera, designed for use with 35 mm film. For the purposes of this case the following description will be adequate. The camera consists essentially of a light-tight box, in the front of which is an opening having a threaded flange for reception of the threaded lens mount. On top of the box is a film winding knob at one end, together with an exposure counting dial, there being a rewind knob at the other end. Also on top is an integral and non-adjustable view finder, a seating device for a sliding shoe (hereinafter further referred to), a time setting device for the camera shutter, a shutter release button, and a small lever for changing the direction of film wind. Of these last-named elements only the seating device for the sliding shoe has any bearing upon the issue here involved. Into this seating device a sliding shoe is slipped, upon which shoe there is an upstanding hollow portion into which the pin on the lower surface of the range finder seats. This shoe has the sole purpose of providing a means whereby the range finder here involved may be mounted on the camera. The lens assembly consists of the following: the lens elements, that is, the glass elements, are mounted within a metal barrel; this barrel is surrounded by a collar into which the lens barrel locks when the lens is in use upon the camera; the collar itself is threaded into a lens flange, this flange being the means by which the lens assembly is screwed into the flange on the camera. When the lens is thus screwed

into the camera the lens flange bears against the flange on the camera and is, accordingly, fixed in position. Rotation of the collar within the lens flange operates to move the lens toward or away from the film plane of the camera, and is the means by which the lens is focussed for different distances. Upon the lens flange is a scale of distance markings, as follows: 3.5', 4, 5, 6, 7, 8, 9, 10, 12, 15, 20, 30, 50, 100, and infinity. It will be observed that these markings closely correspond to the markings on the wheel of the range finder, although the scale on the range finder has three indications below the lowest distance on the camera, and also has one marking (300') above the highest foot marking on the camera scale. It is understood, however, that these additional markings are useful when lenses other than the standard length lens are being used in the camera. On the collar hereinabove described there is a depth of focus scale, not here important; the index line at the center of this scale is used in cooperation with the distance markings on the lens flange in setting the lens to critical focus for any given distance within this scale. The line on the collar bears such a relation to the markings on the lens flange that, when this line is set to any of said markings on the flange, by rotation of the collar, the distance between the lens and film plane is such that the camera is critically focussed for that distance to which the index line is addressed. To set the lens for critical focus at any given distance, the operation is to rotate the collar until the central index line thereon coincides with the proper distance marking on the lens flange. Here again it may be noted that for distances between adjacent indications on the lens flange, as between 30 feet and 50 feet, the user would be called upon to exercise his judgment in properly setting the lens.

The manner in which the two exhibits are used together, whether the range finder be mounted on the camera or used separately, is as follows: the operator selects an object which he desires to have in critical focus; the object is viewed through the range finder as hereinabove described, the adjusting wheel being rotated until a single image is visible. The distance indicated on the wheel is then noted and the operator proceeds to rotate the lens mount collar until the position of the index line thereon registers with the proper distance mark on the lens flange, or, in case of a distance between indications, as closely as he can by judgment approach thereto. Having done so, the camera is focussed for critical focus at the distance of the object to which attention is being directed. It will thus be observed that, in using the range finder in question with the camera, two distinct manual operations are requisite; first, the manipulation of the rotating wheel on the range finder to get the proper distance indication, and second, the setting of the lens in accordance with that indication.

It also appears that the manufacturer of these exhibits makes other cameras of the same general type, but having built-in range

finders. In these the range finder is a fixed portion of the camera and is not detachable. Certain distinctions are to be noted, however, in the operation of the cameras so equipped as against a camera having only the detachable range finder here involved. It appears from the testimony that, in focussing such a camera, only one manual manipulation is necessary. In other words, in focussing the camera upon any given object, if a double image appears in the viewing window of the range finder, a single manipulation results in bringing the images to coincidence and properly setting the lens. It follows therefrom that, in using a camera with a built-in range finder, the operator need not know at all the exact distance of the object being focussed upon since, once coincidence of images is achieved in the viewing window of the range finder, he knows that the lens is properly set. With the detachable range finder the operator must always inform himself of the distance.

We have given this detailed description of the range finder and certain parts of the camera because, in view of the testimony in the case, only by so doing can the relationship between the range finder and camera be understood.

Appellee's witnesses testified that the range finder is essential to the proper functioning of the camera; that for certain purposes, such as photomicrographic or copying work, the camera, Illustrative Exhibit A, can be used without the range finder, but that, for ordinary use, said range finder must be used in order to secure a sharp picture.

That the range finder involved is a very great convenience for the user of the camera for which it was designed we have no doubt, but we are clear that it is not essential to the proper functioning of the camera. In fact, the detachable range finder here involved has nothing whatever to do with the functioning of the camera. It is merely an aid to the operator, enabling him to set the lens more accurately than he could do if he relied merely on his judgment of the distance of a given object from the camera. It merely indicates to the operator the distance of the object to be photographed by him; it is convenient to have it mounted on the camera, but not at all necessary. After the operator has ascertained the distance of the object from the camera by use of the range finder, the latter could be thrown away and the same result would be obtained as if it had remained attached to the camera. Furthermore, the camera could function properly with the same degree of exactitude in respect to "sharp" photographs without the use of a range finder. The distance between the camera and the object to be photographed could be measured with a tape line, furnishing the operator of the camera the same information as he would secure from the use of the range finder.

In the case of *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851, there was involved the dutiable classification of certain tripods, claimed to be parts of cameras. In holding that such tripods were not parts of cameras, we said:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article*. * * * [Italics quoted.]

The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other. * * *

 *  *  *  *  *  *  *

It may be granted that each of the cameras hereinbefore referred to must, in order to be properly used by a photographer, have some adjustable and rigid support, but the very statements of the witnesses for appellee, to the effect that *view cameras, copying cameras*, and *photo-engraving* cameras, must, while in use, be supported by *tripods*, clearly indicate that such *cameras* and *tripods* are separate and distinct commercial entities. [Italics quoted.]

It is evident, we think, from the character of the articles and from the testimony in the case, that, when a tripod and a camera are used together, each "performs its separate function without loss of any of its essential characteristics." Whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity. See *United States* v. *Borgfeldt & Co.*, 11 Ct. Cust. Appls. 105, T. D. 38750; *Dow Co.* v. *United States*, 11 Ct. Cust. Appls. 249, T. D. 39077; *Columbia Shipping Co. et al.* v. *United States, supra* [11 Ct. Cust. Appls. 281, T. D. 39085]; *United States* v. *Kalter Mercantile Co. et al., supra* [11 Ct. Cust. Appls. 540, T. D. 39680].

We are of opinion, therefore, that, although it may be necessary to use *tripods* as *supports* for the involved *cameras*, tripods are not, for that reason, integral, constituent, or component parts of such cameras. The most that can be said is that the two articles—a tripod and a camera—are designed to be used together, one as a support for the other, and that they are chiefly so used.

So in the case at bar, when the range finder here involved and the camera for which it is designed are used together, each "performs its separate function without loss of any of its essential characteristics," and "whether separate or joined, each is complete in itself, each is a distinct and separate commercial entity."

The evidence here shows that it is optional with the purchaser to buy the camera with or without the range finder, and appellee's catalog shows that the range finder is offered for sale separately from the camera.

The Customs Court in its decision stated:

Although in plaintiff's catalog or pricelist (Illustrative Exhibit B) these Fokos range finders are listed on page 12 with other items under the subdivision of said Exhibit B entitled "Camera Accessories" we think they are distinguishable from the tripods covered by the *Willoughby* case, *supra*, in that the weight of the evidence indicates that in 99 per centum of the uses of the camera, Exhibit A, these finders are *essential* to the use thereof; and that without the use of such range finders the quality of the photograph obtained would be dependent on guess-

work, and the photographic result doubtful. In addition there are miniature cameras with built-in range finders. In such cases the range finders would unquestionably be a part of the camera to which they are attached. It would seem, therefore, that the mere fact the range finder, Exhibit 1, is detachable from the camera, Exhibit A, should not take it out of the class of parts of cameras and place it in the category of accessories thereto.

With respect to the foregoing statement regarding the weight of the evidence as to 99 per centum of the uses of the camera, Illustrative Exhibit A, we would observe that, even had it been testified that in 100 per centum of the uses the employment of the range finder was essential, that testimony would not establish that the range finder was a part of the camera. *United States* v. *Willoughby Camera Stores, Inc., supra.* We have already conclusively shown that it is not such part, but is only a great convenience. The operator could cause the camera to function equally well or better if the distance between the camera and the object to be photographed were measured with a tape line.

With respect to the trial court's observation that many miniature cameras have built-in range finders that are parts of cameras, the testimony in the case at bar is that in such cameras the range finder and lens function together in a single manipulation. The distinction between a built-in range finder and the range finders here in issue is thus very apparent, and is not, as the trial court evidently considered, a mere matter of detachability. In any event, cameras having built-in range finders would be classifiable as entireties, and for that reason the classification of such cameras has no application to the issue here involved.

The Customs Court in its decision cites a number of cases, including the case of *United States* v. *Willoughby Camera Stores, Inc., supra,* in support of its decision. We have hereinbefore considered said last-mentioned case, which, in our opinion, requires a contrary conclusion to that reached by the Customs Court in the case at bar. Other cases cited by the Customs Court are *United States* v. *American Steel & Copper Plate Co.,* 14 Ct. Cust. Appls. 139, T. D. 41673; *United States* v. *Bell & Howell Co.,* 19 C. C. P. A. (Customs) 151, T. D. 45263; and *United States* v. *Carl Zeiss, Inc.,* 24 C. C. P. A. (Customs) 145, T. D. 48624.

In each of these cases the article claimed to be a part of a camera was essential to the functioning of the camera in certain of its uses, in fact was indispensable to its functioning when used for certain purposes. Thus, in the *American Steel & Copper Plate Co.* case, certain screens were held to be parts of reproducing cameras, for the reason that such cameras could not function as such without the use of such screens. In *United States* v. *Bell & Howell Co., supra,* certain "Kodacolor filter adapters" were held to be parts of cameras because,

without the use of such adapters, the cameras could not function in the taking of color pictures.

With respect to the citation of the case of *United States* v. *Carl Zeiss, Inc., supra,* the Customs Court stated that it was very applicable to the case at bar. The distinction between the two cases is apparent. In the *Zeiss* case certain cameras were involved having built-in view finders for use with the lens originally upon the camera; but other lenses might be used with said camera, in which case the built-in view finder was useless. Detachable finders were provided, designed for use with particular lenses other than the lens originally upon the camera. When such a lens was employed it was necessary to use its corresponding view finder to enable the camera to function. We therefore held that such view finders were parts of cameras.

In the case at bar the camera, Illustrative Exhibit A, may be used with twelve different lenses, as in the case of the camera involved in the case last cited; but, unlike that case, different range finders are not employed with the different lenses, the same range finder being used with all of the lenses. This is because the only function of the range finder here involved is to ascertain the distance between the camera and the object to be photographed, which of course would be the same regardless of the lens used. When that distance is ascertained, the operator manually sets the camera in accordance with the information derived by him from the range finder, and such range finder has no part whatever in the functioning of the camera.

Appellee cites in support of its contention the case of *Steel, Inc.* v. *United States,* 24 C. C. P. A. (Customs) 423, T. D. 48872. From a reading of the opinion in that case the distinction between it and the case at bar will be apparent. It was there held that certain steel balls, used within a cylinder, but not physically attached thereto, were parts of a grinding machine. The steel balls or their equivalents were operated upon by the motive power of the machine, and without them the machine could not function. No such condition exists in the case at bar.

We are clearly of the opinion that, under the rule declared in *United States* v. *Willoughby Camera Stores, Inc., supra,* the involved range finders are not parts of cameras, and the judgment of the United States Customs Court, insofar as it is the subject of this appeal, is *reversed.*