(C. D. 766)

Sprouse-Reitz Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided May 10, 1943)

*Philip Stein* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*James F. Donnelly* and *Richard E. FitzGibbon,* special attorneys), for the defendant.

Before TILSON, KINCHELOE, Judges; LAWRENCE, J., not participating

TILSON, Judge: Certain screws, assessed with duty at the rate of 45 per centum ad valorem under the provision in paragraph 397 of the Tariff Act of 1930 for "articles or wares not specially provided for, if composed wholly or in chief value of * * * brass * * *," are claimed to be properly dutiable at but 25 per centum ad valorem under paragraph 338 of said act as "screws, commonly called wood screws, of iron or steel."

At the hearing, counsel for the importer made this preliminary statement:

* * * we also rely on the claim in the printed portion of the protest, which states:

If said merchandise is not dutiable directly under any of the paragraphs or sections above mentioned then it is dutiable thereunder by assimilation or material of chief value under and by reason of the provisions of par. 1559, or if not dutiable as above, then at 10 or 20 per cent, ad val. under par. 1558.

Paragraph 1559 is, of course, the similitude provision; and under Paragraph 1558 our claim would be solely at 20 per cent, as a non-enumerated manufactured article. We have no claim at 10 per cent, under 1558, and we abandon that claim.

The facts are undisputed. The invoice shows 13 cases, 3 of which contain brass screws, as represented by collective exhibit 1, and the remaining 10, steel screws, as represented by collective illustrative exhibit A herein. This suit, however, covers only the brass screws, those of steel having been classified as dutiable at 25 per centum ad valorem under said paragraph 338. The screws in both collective exhibits are about ¾ of 1 inch in length and have slotted flatheads, the only difference being that those contested are of brass and those uncontested are of steel. But each class has precisely the same use, to wit, to fasten to wood such things as hinges, hasps, locks, etc., and other wood-fastening uses, the brass screws being employed where the hinge or hasp is also of brass and the steel screws where the metal to be fastened to the wood is steel or iron.

It also appears that brass screws are employed where it is deemed desirable to prevent corrosion thereto due to rust, and likewise when their use in fastening together two pieces of wood may tend to enhance the appearance of the work. However, we are satisfied that both kinds may be fairly considered as wood screws. We quote from the record:

Q. What difference would there be with respect to its use in connection with wood? Does one bind any better than the other, according to your experience?

\* \* \* \* \* \* \*

A. No, they would perform the same function, exactly. They are the same shape; they are made exactly the same. The only difference is in the component material.

Inasmuch, therefore, as it is reasonably established that these brass screws are wood screws, we have for determination this legal question: Are wood screws of brass entitled to the same tariff classification as wood screws "of iron or steel"? Answering this query, counsel for the plaintiff, in his brief filed herein, argues at length that "paragraph 338 specifically covers *all* wood screws of metal," quoting this definition from The Dictionary of Tariff Information (1924) at page 636:

*screws, wood.* Screws known in the trade as "wood screws," because intended for use in wood, are of mild steel or iron; or of brass, copper and zinc when resistance to corrosion is desirable.

Of course, it must be presumed that the lawmakers knew of wood screws other than those of iron or steel. If they intended to cover them all in paragraph 338 that purpose could easily be effectuated by enacting into law the words of counsel "all wood screws of metal" or, simply by omitting from said provision the words "of iron or steel." But it was because they specifically intended to restrict the scope of the provision to the two named kinds of wood screws that they used words of limitation. And so, the addition of those words not only so limited the provision, but also operated to exclude therefrom wood screws of any other metal. *Expressio unius est exclusio alterius.*

But counsel insists that "of iron or steel" in said paragraph 338 "are not words of *limitation* but merely of *description.*" We believe they are both, since it is difficult to conceive of words of limitation that do not describe the articles to which the provision is limited. As we read it, the said paragraph should be construed as though written "iron or steel screws commonly called wood screws." One group of words is as free from ambiguity as the other.

Counsel says:

Had Congress intended to limit "screws commonly known as wood screws" solely to iron or steel, it could very easily have so stated by use of the words so frequently seen in other provisions of the Tariff Act, such as "composed wholly or chiefly of" (iron or steel). No such limitation, however, appears in Paragraph 338, *supra.*

And he adds:

It is to be noted that Paragraph 338, *supra,* does not provide that the screws to be classified thereunder *must* be composed *wholly* or *chiefly* of iron or steel, nor does it specifically exclude wood screws when composed of other metal.

Fortunately, the law in the premises is now fundamentally established. It requires that the words "of iron or steel" be interpreted to mean wholly or in chief value, or predominantly composed, of

either of said metals. As stated by our appellate court in *United States* v. *Guy B. Barham Co.*, 26 C. C. P. A. 83, T. D. 49614:

It is well settled that the general rule is that when a tariff statute provides for "an article of specified material, without declaring to what extent it must be composed of that material, it is at least confined to merchandise of which the specified material is that of chief value or is the predominant one therein," and the words "composed of," "made of," and "kindred expressions" in tariff statutes may, according to the context, mean wholly or substantially wholly of a specified material, or wholly or in chief value of such material. *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, T. D. 33124; *Kenyon Co.* v. *United States*, 4 Ct. Cust. Appls. 344, T. D. 33529; *Blumenthal & Co. et al.* v. *United States*, 5 Ct. Cust. Appls. 327, T. D. 34529; *Steinhardt & Bro.* v. *United States*, 8 Ct. Cust. Appls. 372, T. D. 37629; *Simiansky & Co.* v. *United States*, 9 Ct. Cust. Appls. 288, T. D. 38224; *United States* v. *Kalter Mercantile Co. et al.*, 11 Ct. Cust. Appls. 540, T. D. 39680; *United States* v. *Linen Thread Co.*, 13 Ct. Cust. Appls. 359, T. D. 41257.

In the last of the above authorities cited by the appellate court. (*United States* v. *Linen Thread Co.*), one of the provisions construed called for "Plain-woven fabrics * * * of flax * * *." The court held that "There being nothing in the context which requires that the words 'of flax' be interpreted as meaning 'substantially wholly' of flax, they should be interpreted to mean 'wholly or in chief value of flax,' in accordance with the general rule." The circumstance that companion paragraphs expressly provided for fabrics in chief value of flax as well as for fabrics "of flax" was held not to require a construction of paragraph 1011 of the Tariff Act of 1922 that would limit it to the fabrics mentioned therein when made wholly of flax. The general rule that a provision for articles of a specified material included those in chief value of that material was held applicable.

In the present case the screws in question were classified under the provision in paragraph 397 of the Tariff Act of 1930 for "articles or wares not specially provided for, if composed wholly or in chief value of * * * brass." That they were so composed was admitted by counsel for the plaintiff at the hearing in these words:

* * * . There can't be any dispute about the composition of the article, because we don't deny the composition of the article. We accept the classification of the structure or the composition as returned and as shown, that is, that it is a brass wood-screw. There is no dispute about that at all. * * *.

But despite this admission, we are asked to classify these brass screws under a provision for "screws, commonly called wood screws, of iron or steel." Counsel admits that identical language appeared in the Tariff Acts of 1897, 1909, 1913, and 1922, but points out "that there has never been a case involving wood screws of brass," and adds:

Consequently, it cannot be contended that there has been legislative ratification of any decision or ruling which opposes plaintiff's claim herein by eliminating brass wood screws from classification under Paragraph 338, *supra*.

It may well be that no similar claim to that here alleged was ever made under said paragraph or its predecessors. Nevertheless, counsel

insists that "the authorities, on the other hand, fully support the contention made by plaintiff herein," citing *United States* v. *Astra Bentwood Furniture Co.*, 25 C. C. P. A. 340, T. D. 49434. The screws there in question were variously known as "lag screws," "lag bolts," and "coach screws." As to their composition the court said:

In addition to this oral testimony, a stipulation of counsel was filed which, among other things, stipulated the articles to be composed of "either iron or steel."

Samples, also, of the imported articles are in evidence, and are known as Exhibits 1 and 2. The imported articles are of ⅜-inch steel, approximately 2½ inches in length, having a square chamfered head ½-inch square, without a slot, with a coarse screw and extending 1¼ inches in length, the screw thread being sharp ended and gimlet-like.

The fact which at once distinguishes that case from the present is that all of the articles there in question were either of iron or steel, whereas here the only merchandise involved is of brass. Incidentally, even the bolt provision there invoked is also limited to those "of iron or steel." The cited authority, therefore, has no application here.

More in point is the decision in *Manhattan Import Co., Inc.* v. *United States*, T. D. 47797, 68 Treas. Dec. 68, wherein certain door fasteners, composed in part of chain, were classified under said paragraph 397 as manufactures of metal not specially provided for. The plaintiff invoked the provision in paragraph 329 of said act for "chain * * * of iron or steel," the applicable rate depending upon the diameter of the chain. The proviso to the latter paragraph reads:

That all articles manufactured wholly or in chief value of chain shall not be subject to a lower rate of duty than that imposed upon the chain of which it is made, or of which chain is the component material of chief value.

In the course of our decision we said:

In our opinion, the article is not covered by said paragraph 329. It will be observed that four of the rates claimed apply only to chain made of iron or steel. Judged merely by color and outward appearances the chain in the sample may well be of brass. If so, said rates are inapplicable. If the chain simply resembles brass but is in fact iron or steel, there is no proof to that effect. Nor may such deficiency in proof be overcome by relying on the collector's assessment. His classification is under the provision in said paragraph 397 for—

articles or wares not specially provided for * * * composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal. * * *.

Which metal, however, is not indicated. Hence, the chain may well be of a metal other than iron or steel. The onus was upon the plaintiff to prove the constituent metal.

Also, in *Richard & Co.* v. *United States*, 4 Ct. Cust. Appls. 252, T. D. 33481, where certain furniture nails composed of leather and metal were excluded from a provision for wrought iron or steel nails, the court said:

The evidence does not disclose that the metal portion of the nails is *wrought* iron or steel, even if we were able to say from an inspection that the metal is either

iron or steel rather than an alloy * * *. On the other hand, the return of the appraiser shows the article to be in chief value of leather * * *.

Likewise, in *Vantine & Co.* v. *United States*, 3 Ct. Cust. Appls. 488, T. D. 33124, where screens of embroidered silk panels with wooden frameworks were held not to be "screens of * * * wood" because in chief value of silk. See also *Berbecker* v. *Robertson*, 152 U. S. 373.

And in *E. J. Brooks & Co.* v. *United States*, Abstract 24853, 64 Treas. Dec. 814, where the articles involved were roofing nails, and the provision invoked called for "nails * * * made of iron or steel wire * * * ," this court said:

The shanks in these nails are of iron or steel and the heads are covered with lead * * *.

The words "of iron or steel" ordinarily mean predominantly or in chief value of either of said metals * * *.

The record fails to disclose which metal predominates or is in chief value in these nails * * *. For aught we know the lead may easily be the more valuable component. It is not as though the lead formed a mere coating on the nail head. The fact is that the latter is completely embedded in a very considerable amount of lead which substantially alters the original form of the nail. In order to prevail under paragraph 331, and in view of the nature and character of the sample in evidence, we are satisfied that the onus was upon the plaintiffs to prove that the iron or steel in these nails constituted the component material of chief value. Having failed to establish that essential fact, it follows that all claims must be, and they hereby are, overruled, and judgment will be rendered accordingly.

Again, in *J. T. Ball* v. *United States*, Abstract 24061, 63 Treas. Dec. 1517, this court held certain upholsterers' nails with iron or steel shanks and brass heads to be properly dutiable under said paragraph 397 as manufactures of metal not specially provided for, as classified by the collector, rather than under an *eo nomine* provision in paragraph 331 of said act for such nails composed of two or more pieces of iron or steel. A similar conclusion was reached in *C. R. Laurence* v. *United States*, Abstract 24187, 63 Treas. Dec. 1541, concerning tacks with steel shanks and brass heads. Indeed, any other conclusion would create "confusion worse confounded" in construing the many provisions in the metal schedule containing the limitation "of iron or steel." See paragraphs 307 to 316, both inclusive.

Take for instance paragraph 312. Among other things, it provides for "angles" and "channels" * * * "of iron or steel," whereas in paragraph 381 there is a provision covering "brass angles and channels." There are many other such differentiating provisions in the metal schedule, to say nothing of other schedules.

Equally erroneous is the contention of counsel for the plaintiff that these brass screws are classifiable under said paragraph 338 by virtue of the similitude provision in said paragraph 1559. The latter applies only to nonenumerated articles. *Arthur* v. *Sussfield*, 96 U. S.

128; *Moscahlades Bros.* v. *United States*, 13 Ct. Cust. Appls. 633,. T. D. 41482; *Corporacion Argentina de Productores de Carnes* v.. *United States*, 29 C. C. P. A. 288, C. A. D. 204. Paragraph 397 of the Tariff Act of 1930 contains this clear enumeration or classification: "articles or wares not specially provided for, if composed wholly or in chief value of * * * brass." That is a precise and accurate general description of the present articles, in the absence of an *eo nomine* provision for brass screws. Hence, recourse to the similitude clause is not here permissible.

Moreover, the soundness of that rule is not militated against by the decision in *Strauss* v. *United States*, 2 Ct. Cust. Appls. 203, T. D.. 31946, cited and extensively quoted from in the brief of counsel for the plaintiff herein. True, certain combs of gallilith were there held to be dutiable by similitude as combs of horn, under the Tariff Act of 1909. Nevertheless, that case is here easily distinguishable. In the course of its decision, the appellate court made this significant observation:

So far as we can discover no special tariff provision has ever been made for manufactures of gallilith, and subsequent to the tariff act of 1883 and until the passage of the tariff act of 1909 there was no specific provision for combs of any kind. Consequently gallilith combs brought into the country in 1907 and 1908 were held by the board to be dutiable as nonenumerated manufactured articles.

Therefore, before that decision could successfully be cited as authority for invoking similitude herein, it should first appear that the 1930 law contained no provision for metal screws or for manufactures of brass not specially provided for. As above pointed out,. the contrary is true, which makes the decision wholly inapplicable to the present screws.

On the established facts and the law applicable thereto, all claims of the plaintiff must be, and they hereby are, overruled, and the decision of the collector is *affirmed*.

Judgment will be rendered accordingly.