(C. D. 982)

WINKLER-KOCH ENGINEERING CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided February 13, 1946)

*Philip Stein* for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*William J. Vitale*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: The plaintiff herein seeks to recover allegedly excessive duties imposed by the collector of customs at the port of Houston, Tex., on an importation invoiced as "Seamless hot rolled A. P. I. Casings made from material Grade 'C' in lengths of 25′–32′, screwed and socketed, oiled in- and outside." The merchandise was entered as "seamless steel tubes," and was assessed with duty at the rate of 25 per centum ad valorem under the provision in paragraph 328 of the Tariff Act of 1930 for "all other finished or unfinished iron or steel tubes not specially provided for." Plaintiff contends that the

importation is properly dutiable at three-fourths of 1 cent per pound under the provision in said paragraph for "Lap-welded, butt-welded, seamed, or jointed iron or steel * * * pipes * * * not thinner than sixty-five one-thousandths of one inch, if not less than three-eights of one inch in diameter." That claim is made under paragraph 328, *supra*, directly, or by virtue of the similitude provisions of paragraph 1559 of said act.

For convenient reference said paragraph 328 is set out in full:

PAR. 328. Lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, and stays, not thinner than sixty-five one-thousandths of one inch, if not less than three-eighths of one inch in diameter, three-fourths of 1 cent per pound; if less than three-eighths and not less than one-fourth of one inch in diameter, 1¼ cents per pound; if less than one-fourth of one inch in diameter, 1¾ cents per pound: *Provided*, That no tubes, pipes, flues, or stays made of charcoal iron shall be subject to a less rate of duty than 1¼ cents per pound; cylindrical and tubular tanks or vessels, for holding gas, liquids, or other material, whether full or empty; welded cylindrical furnaces, tubes and flues made from plate metal, whether corrugated, ribbed, or otherwise reinforced against collapsing pressure, and *all other finished or. unfinished iron or steel tubes not specially provided for, 25 per centum ad valorem;* flexible metal tubing or hose, whether covered with wire or other material, including any appliances or attachments affixed thereto, not specially provided for, and rigid iron or steel tubes or pipes prepared and lined or coated in any manner suitable for use as conduits for electrical conductors, 30 per centum ad valorem. [Italics supplied.]

The plaintiff introduced in evidence herein the following: Illustrative exhibit 1, a representative sample of the imported merchandise, save as to weight, size, and possibly the number of threads. Illustrative exhibit 2, a page from a handbook issued by Spang, Chalfant, Inc., Pittsburgh, Pa., publishers of purportedly authoritative printed matter covering merchandise like that involved herein. Illustrative exhibit 3, described as a piece of lap-welded casing. Illustrative exhibit 4, a piece of butt-welded pipe; and illustrative exhibit 5, a piece of seamless pipe. In addition, the plaintiff offered the testimony of three witnesses.

Mr. Chapin, the first witness, testified that he was the secretary of the plaintiff corporation for 9 years and its purchasing agent from 1930 to 1937; that plaintiff's business is the production of oil and the construction of oil refineries; that he ordered the imported merchandise, supervised its delivery, and checked it against the order; that he had ordered similar merchandise during the past 10 or 12 years and was thoroughly familiar with the use made thereof, which was in connection with drilling for oil; that the importation is known to him as seamless casing and comes in lengths from 25 to 32 feet; that as the oil drilling progresses one length after another is placed in the drilled hole, the ends being screwed together; that so-called tubing in the form of small pipe, 2 or 3 inches. in diameter, is run inside the casing to the bottom thereof to receive the oil which does not come into contact with the casing, which merely encases the tubing.

An attempt was made to prove by this witness that the imported merchandise was never known in trade as tubes, but always as "oil well casing or a string of pipe." When asked if merchandise like illustrative exhibit 1 was—

* * * uniformly, generally, and definitely known as casing throughout the trade, the oil trade, where it was chiefly used prior to June 17, 1930?

the witness replied "Yes." In response to the question:

When you speak of seamless pipe, are you calling this pipe or casing?

the witness answered, "Either pipe or casing, used synonymously."

The second witness, an engineer for the Humble Oil & Refining Co. for 17½ years, stated that he was responsible for the design and construction of casing strings in his company's oil wells. After testifying to his familiarity with the terms "tubes," "pipes," and "casing," he was asked:

Wherever casings are used—let's put it that way—are casings known as tubes?

His reply was: "No, never referred to as a tube."

The third witness is a graduate of the University of Texas—

with the degree of B. S., petroleum production engineer, and an M. S. in petroleum production and engineering.

His testimony is substantially the same as that of the previous witness.

On the record as thus made, counsel for the plaintiff contends that—

I. The merchandise is *not* commonly or commercially known as, nor included in the designation of "tubes," as classified by the collector. "Tubes" and "pipes" are not synonymous.

II. The merchandise at bar consists of oil well *casings*, a casing being a form of *pipe*.

III. The merchandise is dutiable at three-fourths of one cent per pound under paragraph 328 directly, under the provision for "pipes." The provision for pipes is not qualified and is all inclusive covering *all* pipes, not specially provided for, including oil well casings.

IV. In the alternative, the merchandise is dutiable at three-fourths of one cent per pound under paragraph 328 by similitude (under the provisions of par. 1559) to "lap-welded * * * iron or steel * * * pipe." [Italics quoted.]

The scholarly and exhaustive treatment accorded the bases of these contentions is reflected in the brief of counsel, and is indicative of the care and thoroughness with which his research was conducted with a view to substantiating, if possible, his theory concerning the law in the premises.

Considering the contentions seriatim, it is fair to assume that the first, one is made in view of the testimony adduced herein. However, we seriously question whether the probative value thereof is sufficient to support the allegation made as to the commercial designation of the instant merchandise. At best, the views expressed are those of the witnesses based upon their experience in the oil-well industry. They affirm that a casing is a pipe, but they deny that a pipe is a tube. On

that proposition, we quote some definitions of the noun "tube" from authoritative works:

1. A long hollow cylindrical body, as of wood, metal, rubber, or glass, generally used for the conveyance of something through it, but often as a receptacle for holding something; a pipe.

In most of their applications there is no difference in sense between *tube* and *pipe; * * *.* As used by machinists, *tube* and *pipe* are often distinguished by an arbitrary but fixed association with certain words, when there is no apparent difference in the sense.—Funk & Wagnalls New Standard Dictionary of the English Language (1941).

1. A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; as, a fire *tube;* a water *tube, * * *.*

6. A pipe.—Webster's New International Dictionary (1939).

1. A pipe or hollow cylinder, especially when of small size and used as a conduit for liquids, or for containing liquids, as in some forms of scientific apparatus. Mechanically there is no distinction between a *pipe* and a *tube;* but in use the two words are often somewhat arbitrarily distinguished. Thus, when the form of the thing is chiefly considered, *tube* is regularly used: as, a steam-boiler having the shape of a large *tube*—not pipe; so, also, with reference to certain mechanical uses one word or the other is exclusively used: as, a gas-*pipe*, a drain-*pipe*, a test-*tube*. The words are also distinguished in use, but less clearly, according to the material employed: as, an iron *pipe*, a rubber *tube*, a brass *tube*, etc.—Century Dictionary.

1. A metallic pipe, of many kinds and uses.

5. A pipe for water or fire in a steam-boiler. It would be well to call water-pipes *tubes*, and fire-pipes *flues*, if it were not too late to attempt careful nomenclature now. The present practice is to call them flues or tubes, according to their relatively large or small diameter respectively.—Knight's American Mechanical Dictionary, vol. III, pp. 2640 and 2642.

1. A hollow body, usually cylindrical, and long in proportion to its diameter, of wood, metal, glass, or other material, used to convey or contain a liquid or fluid, or for other purposes; a pipe.—The Oxford Dictionary, vol. 10, pt. I, p. 443.

As we read the above definitions, a "tube" may well mean a "pipe", and vice versa. At least, that conclusion would seem to be more amply supported by authoritative lexicographers than are the contrary views expressed by the witnesses herein, whose opinions are necessarily predicated upon their experience in the oil-well construction industry. Nor is the element of use of the essence in determining what is a tube. That was settled by our appellate court as early as May 21, 1917, in *Ball et al.* v. *United States* (8 Ct. Cust. Appls. 143, T. D. 37271), a case which arose under the Tariff Act of 1913. The tubes there under consideration were of steel and measured from 5 to 10 feet long, with inside diameters varying according to lengths from about an inch to 3 or 4 inches. Of such merchandise, the court said:

So far as form alone is concerned, these articles may be described as seamless tubes or pipes.

They were employed as material in the manufacture of the inside and outside rings of ball bearings, called ball races. Referring to

such use, and the importers' contention based thereon, the court observed:

The importers' counsel urges that they are not tubes because they are not *used* for the purposes in which tubes are usually employed. He points to the fact that as defined by the lexicographers, one meaning of the word "tube" is a "hollow cylinder of any material to convey liquids or gases," and says that the use to which these articles are applied is so far foreign thereto that they are not tubes in the common acceptation of the term.

Continuing, the court pointed out that Webster defines a tube as follows:

*Tube.* 1. A hollow cylinder, of any material, to convey liquids or gases or for some other purpose; a pipe; as, a fire *tube*; a water *tube*; a condenser *tube* (see Condenser, 2e); the *tubes* of a tubular bridge; a friction *tube*; the *tube* of a musical instrument; bronchial *tube*; a priming *tube*, etc.

The word "tube" is arbitrarily associated with certain articles or devices not customarily called *pipes*; and vice versa, although *tube* and *pipe* are practically synonymous mechanically; as, iron *pipe*; glass or rubber *tube*; gas *pipe*; boiler *tube.*

In Knight's Mechanical Dictionary, when referring to it as made of metal, it is said that a tube is a "metallic pipe of many kinds and uses." Based upon such definitions, the court thus stated its conclusion:

We think it cannot be said that whether or not an article is a tube depends upon the use to which it is applied. Webster's definition, which is fairly typical, recognizes "some other purpose" than as a conduit. The uses of steel tubes as material are so common and well known that in the absence of commercial designation we cannot say the articles here are not steel tubes within the common understanding of that term. To formulate a definition of "tube" that would exclude them in this case would be to invite trouble in another. Their form clearly answers the call of the definition, and that is sufficient.

Under that authority we are satisfied that the imported casings or pipes are tubes, as the latter term is commonly understood, and we so hold. That conclusion is not militated against by plaintiff's proof attempting to show a different commercial meaning. The only evidence purporting to establish commercial designation is the testimony of the witness Chapin, which, in our opinion, falls far short of accomplishing that result, since he was unable to show that he had bought or sold merchandise similar to that involved herein prior to the enactment of the Tariff Act of June 17, 1930. The testimony of the other two witnesses being purely scientific has no evidentiary value in proving commercial designation. Hence, as the record stands, it must be held that the common meaning of the terms in controversy must prevail.

In *American Felsol Co. et al.* v. *United States* (25 C. C. P. A. (Customs) 367, T. D. 49454), our appellate court said:

In support of our conclusion that Congress, in using the term "odoriferous or aromatic chemicals," used it in its common, ordinary sense and not in the technical, scientific sense, the following authorities would seem to be in point:

In *Bakelite Corporation et al.* v. *United States* (16 Ct. Cust. Appls. 378, T. D. 43117), the court had under consideration paragraphs 27 and 1549, Tariff Act of 1922, both being "coal-tar products" paragraphs. Construing certain language of the paragraphs, the court said:

The word [products], as used in the statute, must be given its ordinary meaning, no commercial designation being attempted to be shown. If the testimony of the witnesses for the importers may be construed as simply expressing their interpretation of the statute, then such testimony is immaterial; if their statements may be taken as an attempted statement of the scientific meaning of the word "products," it is sufficient to note that tariff acts are drafted, "not in the terms of science, but in the language of commerce, which is presumptively that in common use" *Meyer & Lange* v. *United States* (6 Ct. Cust. Appls. 181, T. D. 35436).

To like effect, the court quoted at some length from the opinion of Mr. Justice Story of the Supreme Court of the United States in *Two Hundred Chests of Tea; Smith, Claimant* (9 Wheat. (22 U. S.) 428, 437).

The second contention of plaintiff, above stated, is, we believe, fully established of record; namely, that the importation "consists of oil-well *casings*, a casing being a form of pipe." As pointed out above, however, a pipe is in fact a tube as commonly understood.

As to plaintiff's third contention, we quote from page 5 of the stenographic minutes as follows:

Mr. VITALE. Before we proceed, I take it from the statement just made by counsel that the plaintiff will concede that the merchandise at bar is not lap-welded, butt-welded, seamed, or jointed.

Mr. STEIN. Yes, I will concede that.

Judge KINCHELOE. All right, let the record show it.

Mr. STEIN. And I assume that Government Counsel will concede that the merchandise here is seamless.

Mr. VITALE. Yes, if it is not seamed, it is seamless.

Mr. STEIN. May the record show it is agreed that the merchandise is seamless?

Mr. VITALE. Yes, that is agreed to.

Despite the above concessions, plaintiff in the third contention insists that the imported casings or pipes are directly dutiable under the first provision in said paragraph 328, which reads:

Lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, and stays, not thinner than sixty-five one-thousandths of one inch, if not less than three-eighths of one inch in diameter, three-fourths of 1 cent per pound; * * *.

Certainly, there is nothing ambiguous about the language of that provision. Nevertheless, plaintiff in its brief insists that—

* * * Congress intended by paragraph 328, *supra*, that all iron and steel pipes including the casings at bar (*ejusdem generis* therewith) should be classified thereunder at three-fourths of 1 cent per pound.

and argues that since casing and pipe are synonymous terms, such articles must be included in the provision, because, it is urged—

* * * Congress manifestly did not intend to limit pipes by any of the terms it applied to *tubes* in the same paragraph.

Consequently, plaintiff concludes that "the enumeration for iron and steel pipes in paragraph 328 is all-inclusive."

Now, if, as contended by plaintiff "Congress manifestly did not intend to limit pipes by any of the terms it applied to *tubes* in the same paragraph," then, to be consistent, why not also eliminate the words "iron or steel" as inapplicable to "pipes"? Without indulging further discussion, we are satisfied that there is no merit in plaintiff's allegation that—

\* \* \* The provision for pipes is not qualified and is all inclusive covering *all* pipes, not specially provided for, including oil well casings.

Answering the fourth and last of the above-stated contentions of plaintiff, we merely cite our comparatively recent decision in *Sprouse-Reitz Co., Inc.* v. *United States* (10 Cust. Ct. 265, C. D. 766), a case which involved the question of the tariff status of wood screws composed of brass. There the competing provisions were "articles or wares not specially provided for, if composed wholly or in chief value of \* \* \* brass," in paragraph 397 of the Tariff Act of 1930, as against "screws, commonly called wood screws, of iron or steel" in paragraph 338 of said act. While conceding that the involved screws were in fact composed of brass, plaintiff nevertheless contended they were dutiable under paragraph 338, by virtue of the similitude provision in paragraph 1559 of said act. In disposing of that claim we said:

Equally erroneous is the contention of counsel for the plaintiff that these brass screws are classifiable under said paragraph 338 by virtue of the similitude provision in said paragraph 1559. The latter applies only to nonenumerated articles. (*Arthur* v. *Sussfield* (96 U. S. 128); *Moscahlades Bros.* v. *United States* (13 Ct. Cust. Appls. 633, T. D. 41482); *Corporacion Argentina de Productores de Carnes* v. *United States* (29 C. C. P. A. 288, C. A. D. 204).) Paragraph 397 of the Tariff Act of 1930 contains this clear enumeration or classification: "articles or wares not specially provided for, if composed wholly or in chief value of \* \* \* brass." That is a precise and accurate general description of the present articles, in the absence of an *eo nomine* provision for brass screws. Hence, recourse to the similitude clause is not here permissible.

It will be seen that in order to invoke successfully the similitude provision in the present case the onus is upon the plaintiff to show (1) that the imported articles are not within the purview of the provision covering "all other finished or unfinished iron or steel tubes not specially provided for" in paragraph 328, *supra*, as classified by the collector, nor under the general classification embracing "Articles or wares not specially provided for, \* \* \* if composed wholly or in chief value of iron, steel, \* \* \* or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem," in paragraph 397.

Aptly descriptive of the present situation is the language of the Supreme Court, speaking through Mr. Justice Hunt, in *Arthur* v. *Sussfield* (96 U. S. 128), a case which arose under the Tariff Act of 1864. It involved the question of the tariff classification of an

importation consisting of spectacles made of glass and steel. The collector classified the goods under a provision in the third section of said act which read: "On all manufactures of steel, or of which steel shall be a component part, not otherwise provided for, forty-five per cent," and exacted duty at that rate. The importers insisted that the duties were to be chargeable under a provision in the ninth section of the same act, which read: "On pebbles for spectacles and all manufactures of glass, or of which glass shall be a component material, not otherwise provided for, forty per cent." The court there stated the issue:

On the part of the Government, it is now insisted that the third and the ninth sections of the act of June 30, 1864, give a partial description of the articles taxed; but that neither is so complete as to exclude the other, and therefore neither description can be applicable: hence it is argued that spectacles must be treated as a nonenumerated article, and that equally resembling two enumerated articles—to wit, those of which steel is a component and those of which glass is a component,—they must, under the similitude clause of the act of August 30, 1842 (5 Stat. 565), pay the highest rate of duty chargeable on either of the articles they resemble.

To this the court replied:

We are not able to assent to this course of reasoning. The similitude act applies only to nonenumerated articles. These goods are enumerated. They fall under the description or enumeration of both sections, and if either were absent, the description under the other would be sufficient. Thus, if it were not for that provision of the act describing "manufactures of which steel is a component part," there could be no difficulty in classifying them under that clause which describes "manufactures of which glass shall be a component material"; and if it were not for the provision describing "manufactures of which glass shall be a component material," there could be no difficulty in classifying them under that clause which describes "manufactures of which steel is a component part."

Here, these casings or pipes, being commonly known as tubes, are specifically dutiable under the *eo nomine* provision for tubes, as classified by the collector. Were they not so classifiable, they would nevertheless be provided for under the general provision in said paragraph 397 as articles or wares not specially provided for, composed in chief value of metal, as above indicated. In neither instance would recourse to the similitude provision be permissible. As stated in *Ungerer & Co. (Inc.)* v. *United States* (15 Ct. Cust. Appls. 279, T. D. 42469):

An article is, for the purpose of invoking the similitude paragraph "enumerated" if it comes within a class made dutiable in general terms quite as certainly as if it is made dutiable under an *eo nomine* designation (*Robins* v. *United States* (1 Ct. Cust. Appls. 252); *United States* v. *Buss* (3 idem, 87); *United States* v. *Cochran* (3 idem, 57, and cases therein cited)).

In view of the law on the subject of similitude so far as it pertains to the fourth-enumerated contention of plaintiff, our conclusion,

based upon the facts here established, would have to be that if the imported articles were neither pipes nor tubes within the clear intendment of those words as they appear in paragraph 328, *supra*, they would, nevertheless, plainly be "enumerated" in said paragraph 397 as "Articles or wares not specially provided for * * * wholly or in chief value of iron, steel * * * or other metal." But since they are clearly more specifically provided for under the provision in said paragraph 328 for "all other finished or unfinished iron or steel tubes not specially provided for," we affirm that classification of the collector.

The protest is therefore overruled in all respects and judgment will be entered accordingly.